FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

17 JUL 24 PM 3:48

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____AD_____
       DEPUTY CLERK

JOSEPH OZMUN,
          Plaintiff,

-vs-                                                      Case No. A-16-CA-940-SS

PORTFOLIO RECOVERY ASSOCIATES, LLC;
RAUSCH, STRUM, ISRAEL, ENERSON &
HORNIK LLC; WESTERN SURETY
COMPANY; and TRAVELERS CASUALTY
AND SURETY COMPANY OF AMERICA,
          Defendants.

## ORDER

BE IT REMEMBERED on the 6th day of June 2017, the Court held a hearing in the above-styled cause and the parties appeared through counsel. Before the Court are Defendants Travelers Casualty and Surety Company of America (Travelers) and Rausch, Sturm, Israel, Emerson, & Hornik LLC (RSIEH)'s Motion for Summary Judgment [#36], Plaintiff Joseph Ozmun (Plaintiff)'s Response [#47] in opposition, and Travelers and RSIEH's Reply [#51] in support; Portfolio Recovery Associates, LLC (PRA) and Western Surety Company (Western)'s Motion for Summary Judgment [#62], Plaintiff's Response and Cross-Motion for Summary Judgment [#64], and PRA and Western's Reply [#70]; and PRA and Western's Second Motion to Strike Response [#69], Plaintiff's Response [#71] in opposition, and PRA and Western's Reply [#73] in support.[1] Having reviewed the

---

[1] The parties also filed Plaintiff's Motion for Extension of Time to Respond to Defendants' Motion for Summary Judgment [#57], Plaintiff's Motion to Strike Motion for Extension of Time [#58]; Plaintiff's Motion to Postpone Ruling on Motion for Judgment [#59] and Defendants Travelers, RSIEH, PRA, and Western (collectively, Defendants)' Response [#60] in opposition; PRA and Western's Motion to Strike Response [#65] and PRA and Western's Motion to Withdraw Motion to Strike Response [#66]; as well as Plaintiff's Motion for Leave to File Supplemental Authority [#75] and PRA and Western's Response [#76] in opposition. In light of the Court's rulings below, the Court dismisses these motions.

documents, the arguments of counsel made at the hearing, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

### I. Factual History

This lawsuit concerns PRA's efforts to collect Plaintiff's outstanding credit card debt of $2,065.21 (the Debt) after Plaintiff defaulted.

On March 20, 2015, PRA, represented by RSIEH, filed a petition against Plaintiff in Texas state court to recover the Debt (Underlying Lawsuit). Compl. [#1-1] Ex. C (Pet.) at 1. The petition listed the Debt balance as $2,065.21 and requested "[a]ctual damages in the amount of $2,065.21." *Id.* at 1, 3. Plaintiff was served with the petition in the Underlying Lawsuit. Sometime after being served in the Underlying Lawsuit, Plaintiff paid $57.00 of his debt. PRA Mot. Summ. J. [#62] at 2; Pl.'s Second Resp. [#64] at 3.

Subsequently, because Plaintiff failed to timely answer the Underlying Lawsuit and a majority of the Debt was still outstanding, RSIEH filed a motion for default judgment on PRA's behalf on November 5, 2015. The version of the motion for default judgment docketed with the state court includes the motion for default judgment pleading as well as supporting documents. *See* Pl.'s Second Resp. [#64-6] Ex. E (Docketed Mot.). One such document is the affidavit of Meryl Dreano, the custodian of records for PRA, indicating the Debt totaled $2,065.21 as of the date of the affidavit. *Id.* (Dreano Aff.) at 10. The affidavit was signed January 14, 2015. *Id.* No proposed default judgment was included with motion for default judgment docketed in the state court. *See id.* Nevertheless, the motion for default judgment pleading expressly asked the state court to "grant [PRA]'s Motion for Default Judgment and award [PRA] the relief requested in [PRA]'s petition by signing and entering

the attached proposed Default Judgment." *Id.* at 4. No specific amount was requested nor was the balance of the Debt listed in PRA's pleading. *See id.* at 2–4. It is disputed whether PRA's motion for default judgment was served on Plaintiff, but a default judgment was never entered in the Underlying Lawsuit.

Following PRA's motion for default judgment, PRA received a letter listing Plaintiff as the sender and dated May 31, 2016, stating the following:

> I am writing to you regarding the account referenced above. I refuse to pay this debt.
>
> My monthly expenses exceed my monthly income; as such there is no reason for you to continue contacting me, and the amount you are reporting is not accurate either. If my circumstances should change I will be in touch.

Am. Compl. [#53-1] Ex. F (Debt Letter). On July 8, 2016, PRA informed a consumer reporting agency of the Debt. PRA reported a balance of $2,008.21 on the Debt and did not indicate the Debt was disputed.

Some months later, PRA moved for summary judgment in the Underlying Lawsuit. On March 29, 2017, the state court granted PRA's motion for summary judgment, issuing a judgment in "the amount of $2008.21, which includes credit for payments already made totaling $57.00 as actual damages . . . ." PRA Mot. Summ. J. [#62-1] App.(State Court Order) at 1.[2]

## II. Procedural History

On August 3, 2016, Plaintiff filed a complaint in this Court alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p, and the Texas Debt Collection Act (TDCA), TEX. FIN. CODE § 392.001–404, against PRA, Western, RSIEH, and Travelers. Compl. [#1].

---

[2] Rather than separating documents into individual exhibits, PRA and Western simply grouped their supporting documents into one cumbersome appendix. Thus, in referencing the Appendix, the Court includes an explanatory parenthetical to indicate which documents it is discussing.

In particular, Plaintiff claims PRA and RSIEH (1) violated the FDCPA and TDCA by misrepresenting the Debt balance and attempting to collect an extra $57.00 from Plaintiff in the Underlying Lawsuit and (2) PRA violated the FDCPA and TDCA by failing to report the Debt was disputed. Am. Compl. [#53] ¶¶ 64–71. Western is the surety company for the bond PRA has on file with the Texas Secretary of State; Travelers is the surety company for RSIEH's bond. *Id.* ¶¶ 9, 13.

On February 21, 2017, Travelers and RSIEH filed a joint motion for summary judgment. RSIEH Mot. Summ. J. [#36]. Following two extensions, Plaintiff responded. Pl.'s First Resp. [#47]. Plaintiff also filed an amended complaint with the Court's permission. *See* Am. Compl. [#53]. Travelers and RSIEH submitted a reply in support of their motion for summary judgment, and shortly thereafter the Court entered an order postponing ruling on the pending motion for summary judgment to enable the parties to confer. Order of Apr. 12, 2017 [#56]. Giving the parties thirty days from the entry of the order to parley, the Court noted it "expect[ed] a dismissal in this lawsuit . . . ." *Id.* Nevertheless, the parties were unable reach an agreement.

Following the expiration of the thirty-day period, PRA and Western filed a motion for summary judgment on May 25, 2017. PRA Mot. Summ. J. [#62]. On June 6, 2017, the Court held a hearing to gain perspective on the status of the issues. Subsequently, on June 8, 2017, Plaintiff filed his response to the second motion for summary judgment in combination with a cross-motion for summary judgment. Pl.'s Second Resp. [#64]. PRA and Western filed a motion to strike Plaintiff's response, and in the alternative, motion for a more definite statement, as well as a reply in support of their motion for summary judgment. Second Mot. Strike [#69]; PRA Reply [#70]. The pending motions are now ripe for the Court's consideration.

# Analysis

## I.    Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence

supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

As an initial matter, the Court first considers PRA and Western's second motion to strike and, in the alternative, motion for a more definite statement. *See* Second Mot. Strike [#69]. PRA and Western argue the Court should strike Plaintiff's combined response and cross-motion for summary judgment because the motion exceeded the page limit and Plaintiff failed to file his dispositive motion by May 25, 2017—the deadline listed in the scheduling order. *Id.* Alternatively, PRA and Western ask the Court to strike the portion of Plaintiff's response requesting summary judgment or require Plaintiff to provide a more definite statement by filing separate motions. *Id.*

Plaintiff's response does not appear to exceed the page limit when taking into account items such as the caption and signature block. *See* Local Rule CV-7(e)(3) ("These page limits are exclusive of the caption, signature block, any certificate, and accompanying documents."). Additionally, while Plaintiff's cross-motion for summary judgment was filed late—for which no good cause has been shown—the Court nevertheless considers Plaintiff's summary judgment motion for its own

convenience. Granting Defendants' request to strike Plaintiff's motion for summary judgment at this point would only delay the Court's summary judgment decision and prolong this lawsuit. Therefore, the Court DENIES PRA and Western's second motion to strike and, in the alternative, motion for a more definite statement.

The Court now turns to the merits of the cross-motions for summary judgment. As stated above, Plaintiff alleges violations of the FDCPA and the TDCA. Travelers and RSIEH ask the Court to grant summary judgment in their favor, arguing there was no misrepresentation as to the amount of the Debt in the motion for default judgment and Plaintiff presented no basis for the joinder of Travelers. Travelers and RSIEH also request their fees and costs based on Plaintiff's alleged bad faith in bringing this suit. Additionally, PRA and Western request summary judgment, arguing PRA sought the correct Debt amount in the motion for default judgment, Plaintiff does not have standing, Plaintiff did not actually dispute his debt, and PRA is entitled to the *bona fide* error defense. Finally, Plaintiff claims he is entitled to summary judgment because his alleged violations of the FDCPA are undisputed and no defense applies.

Because standing is a "core component" of the case-or-controversy requirement of Article III and therefore essential to federal jurisdiction, the Court first examines Defendants' arguments Plaintiff does not have standing to assert his federal or state law claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

A. **Standing for Federal Claims**

Defendants argue Plaintiff cannot establish a concrete injury-in-fact sufficient to confer standing. PRA Mot. Summ. J. [#62] at 7. Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980).

"One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To meet the standing requirement a plaintiff must show (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Consol. Cos., Inc. v. Union Pacific R.R. Co.*, 499 F.3d 382, 385 (5th Cir. 2007); *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (citing *Lujan*, 504 U.S. at 560–61). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

The United States Supreme Court recently addressed standing in the context of an alleged violation of a statutory right. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545–50 (2016). With regard to concreteness, the Court reiterated that both tangible and intangible injuries can suffice. *See id.* at 1549. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* First, courts should consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Second, Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law . . .'" and "has the power to define injuries . . . that will give rise to a case or controversy where none existed before." *Id.* (quoting *Lujan*, 504 U.S. at 578).

At the same time, the Court stated, "Article III standing requires a concrete injury even in the context of a statutory violation," emphasizing "a bare procedural violation, divorced from any

concrete harm" would not satisfy the injury in fact requirement. *Id.* at 1543, 1549. The Court emphasized that "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 1548. Sometimes, however, "the violation of a procedural right granted by statute can be sufficient . . . to constitute injury in fact . . . ." *Id.* at 1544. The Court offered two examples:

> (1) "[A] group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury . . ."; and
>
> (2) "[T]wo advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act 'constitutes a sufficiently distinct injury' . . . ."

*Id.* at 1549–50 (internal citations omitted).

Recently, the Fifth Circuit applied *Spokeo* in a case where the plaintiff alleged the consumer-debt collection agency failed to mark debts as "disputed" in violation of the FDCPA. *See Sayles v. Advanced Recovery Sys., Inc.*, No. 16-60640, 2017 WL 2872343, at *1, 3 (5th Cir. July 6, 2017). There, the Fifth Circuit affirmed the district court's holding that the plaintiff satisfied all elements of standing. *Id.* at *3. In particular, the Fifth Circuit noted the violation of a procedural right granted by statute can be sufficient to constitute injury in fact "where a statutory violation creates the risk of real harm." *Id.* (quoting *Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 749 (N.D. Ill. 2016) (quoting *Spokeo*, 136 S.Ct. at 1549)) (internal quotation marks omitted). The failure to mark a debt as disputed "exposed [plaintiff] to a real risk of financial harm caused by an inaccurate credit rating." *Id.* (citations omitted). Therefore, the Fifth Circuit held the district court did not err in finding the plaintiff's injury was concrete. *Id.*

Thus, the inquiry for this Court is whether the plaintiff suffered an actual harm from the defendant's alleged wrongful conduct or there is "risk of real harm" sufficient to meet the concreteness requirement. *See id.* Defendants argue Plaintiff does not have standing for his FDCPA

claims because he cannot show a concrete injury in fact, conceding Plaintiff can meet the other standing requirements. In conducting the standing inquiry here, the Court examines whether Plaintiff established a concrete injury in fact for each of the federal claims he asserts irrespective of whether he can succeed on the merits. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984)) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press.").

### i. Alleged Misrepresentation in Motion for Default Judgment

The Court turns to Plaintiff's allegation PRA and RSIEH misrepresented the Debt balance and attempted to collect an additional $57.00 in the state motion for default judgment. Plaintiff identifies no actual harm suffered as a result of the alleged misrepresentation.[3] Therefore, the inquiry becomes whether the alleged statutory violation in this instance "creates the risk of real harm." *See Sayles*, 2017 WL 2872343, at *3.

Here, Plaintiff alleges a violation of 15 U.S.C. § 1692e, which provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . . .
>     (2) The false representation of—
>         (A) the character, amount, or legal status of any debt; . . . .

Although Plaintiff in this case fails to discuss how the violation of § 1692e(2) creates a risk of real harm, the Court nevertheless finds the alleged statutory violation exposes consumers to a real risk of

---

[3] Particularly troublesome, Plaintiff neglects to even directly reference the alleged misrepresentation in responding to Defendants' lack-of-standing argument. *See* Pl.'s Second Resp. [#64] at 9 (only discussing standing for the claim PRA failed to report the Debt as disputed).

financial and legal harm.[4] An inaccurate representation of the character, amount, or legal status of a debt could have disastrous financial, legal, and reputational consequences for a consumer. Therefore, the Court finds Plaintiff has a concrete injury and establishes standing for his allegation PRA and RSIEH violated the FDCPA by misrepresenting the Debt amount.

###    ii.    Alleged Failure to Mark the Debt as Disputed

Defendants also contend Plaintiff does not have standing for his claim PRA failed to mark the Debt as disputed in its communication with a consumer debt reporting agency. The Fifth Circuit's recent holding in *Sayles* is instructive. Just as the failure to mark the debt as disputed exposed the plaintiff in *Sayles* to a real risk of financial harm caused by inaccurate credit rating, here too the alleged failure to mark the Debt as disputed exposed Plaintiff to a real risk of financial harm. *See Sayles*, 2017 WL 2872343, at *3. Therefore, Plaintiff's injury is concrete and he has standing to assert this claim.

### B.   Standing for State Claims

Defendants also argue Plaintiff lacks standing to assert claims under the TDCA. PRA Mot. Summ [#62] at 9–10. Specifically, Defendants argue Plaintiff cannot prove he suffered any damages for PRA's alleged failure to mark the Debt as dispute or failure to cease collection activity following notice of the dispute. *Id.*

For a cause of action under the TDCA, a party may sue for either injunctive relief or "for actual damages sustained as a result of a violation of this chapter." TEX. FIN. CODE § 392.403(a). The

---

[4] The FDCPA was enacted in part to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). In this case, Plaintiff alleges only the motion for default judgment included a misrepresentation of the Debt via a reference to the state court petition and via the attached affidavit, both of which listed the original Debt balance. *See* Am. Compl. [#53] ¶¶ 29–32. A misrepresentation caused by indirect references to a debt balance—where the direct reference was inadvertently omitted—does not seem to rise to the level of abusive debt practices. Although it is tempting to find no standing for this claim because of Plaintiff's misuse of the protections granted by Congress, to do so would prohibit other consumers—those justly entitled to validate rights granted by § 1692e(2)—from establishing standing.

Texas Supreme Court has not defined the scope of § 392.403(a), but "the rule suggested by [Texas] cases and supported by a plain reading of the statutory text is that persons who have sustained actual damages from a TDCA violation have standing to sue." *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 473 (5th Cir. 2015) (citing § 382.403(a)). Actual damages are those damages recoverable under common law, such as direct or consequential damages. *Alanis v. US Bank Nat'l Ass'n*, 489 S.W.3d 485, 512 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997)). Under Texas law, mental anguish is a form of actual damages. *McCaig*, 788 F.3d at 473 (citation omitted).

Plaintiff does not argue he sustained any actual damages. *See* Pl.'s Second Resp. [#64] at 16–17. Plaintiff does not even claim he experienced mental anguish. *Id.* Instead, Plaintiff argues a party can seek "injunctive relief against the [TDCA] violations . . . ." *Id.* at 17. Yet Plaintiff's amended complaint does not request any such injunctive relief.[5] *See* Am. Compl. [#53]. Thus, because Plaintiff fails to show he suffered any actual damages and is not seeking injunctive relief, he has no standing to assert claims under the TDCA. Therefore, the Court enters a take nothing judgment on Plaintiff's TDCPA claims.

As Plaintiff's claims against Travelers and Western only stem from the bonds the insurance companies issued on behalf of RSIEH and PRA for liability under Texas law, a take nothing judgment on Plaintiff's TDCA claims warrants a take nothing judgment against Travelers and Western. *See* TEX.

---

[5] Plaintiff argues the request for "such other or further relief as the Court deems proper" in the amended complaint shows he is seeking injunctive relief. Pl.'s Second Resp. [#64] at 17. The Court disagrees. Plaintiff makes no other reference to injunctive relief in his amended complaint and makes no allegation of a continuing violation of the TDCA. *See* Am. Compl. [#53]. The Court declines to find any injunctive relief was requested or would be proper in this case.

FIN. CODE § 392.102 ("A person who claims against a bond for a violation of this chapter may maintain an action against the third-party debt collector or credit bureau and against the surety.").

## C.   Fact Issues Preclude Summary Judgment

RSIEH and PRA both argue they are entitled to summary judgment Plaintiff's FDCPA claims. In particular, they claim there was no misrepresentation as to the amount of the Debt in the state motion for default judgment. PRA also claims it accurately reported the Debt to the consumer debt reporting agency because Plaintiff did not actually dispute the Debt. By contrast, in his motion for summary judgment, Plaintiff argues his alleged violations of the FDCPA are undisputed. However, for reasons discussed in detail below, factual issues remain precluding summary judgment on both FDCPA claims.

### i.   Alleged Misrepresentation in Motion for Default Judgment

The parties dispute whether the Debt was misrepresented in the motion for default judgment. A representation is considered false if "it would mislead the unsophisticated or least sophisticated consumer." *Meroney v. Pharia, L.L.C*, 699 F. Supp. 2d 550, 552 (N.D. Tex. 2009) (citing *Goswami v. Am. Collections Enter. Inc.*, 377 F.3d 488, 495 (5th Cir. 2004)); *see also In re Eastman*, 419 B.R. 711, 730 (Bankr. W.D. Tex. 2009) (applying the least sophisticated consumer standard to a lawsuit where the Defendants improperly filed a motion for a default judgment). Although an unsophisticated consumer is neither "shrewd nor experienced in dealing with creditors," he is not "tied to the very last run on the [intelligence or] or sophistication ladder." *Id.* (internal quotation marks omitted) (alteration in original). Furthermore, a communication is to be evaluated as a whole to determine if it violates the FDCPA. *See Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009); *Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 (5th Cir. 2002). And while generally whether a consumer would perceive a

communication as deceptive is a question of fact, when "reasonable minds" cannot differ as to whether a communication is deceptive or misleading to an unsophisticated consumer, the court may enter a decision as a matter of law. *See Gonzalez*, 577 F.3d at 606–07.

Here, Plaintiff alleges the motion for default judgment misrepresented the balance of the Debt because (1) it asked for the relief requested in the petition, which listed the Debt balance as $2,0651.21; and (2) the Dreano affidavit, which indicated the Debt balance was $2,065.21 as of January 14, 2015, was attached. Pl.'s First Resp. [#47] 7–8; Pl.'s Second Resp. [#64] at 11–12. It is undisputed the motion for default judgment pleading itself makes no explicit reference to the balance of the Debt. Instead, the pleading only asks the court to grant "the relief requested in [PRA's] petition by signing and entering the attached Default Judgment." Docketed Mot. at 4. It is also undisputed the version of the motion for default judgment docketed in the state court did not include a proposed default judgment.

RSIEH contends the version of the motion for default judgment version docketed by the state court is not the full version of motion for default judgment it submitted. *Comp.* Docketed Mot. *with* Travelers' Mot. Summ. J. [#36-14] Ex. C-1 (Submitted Mot.). It claims the full version of the motion submitted to the state court included the motion for default judgment, a cover letter to the clerk, and two copies of a proposed default judgment—one of which was labeled for return to RSIEH—as well as other supporting documents. *See* Submitted Mot. The proposed default judgment allegedly included with the submitted motion requested "[j]udgment in the amount of $2008.21, which includes credit for payments already made totaling $57.00 . . . ." *Id.*

However, deciding whether RSIEH submitted a version of the motion for default judgment including a proposed default judgment requires the Court to make an impermissible credibility

determination. *See Reeves*, 530 U.S. at 150. Furthermore, RSIEH does not explain why the docketed version of the motion for default judgment did not include the proposed judgment or why the motion for default judgment did not expressly reference the correct Debt balance.

Viewing the docketed filing as a whole, the Court finds reasonable minds could differ as to whether the motion for default judgment was deceptive or misleading to an unsophisticated consumer. An unsophisticated consumer might conclude RSIEH was trying to collect $57.00 more than the Debt's balance because the motion for default judgment did not feature an express reference to the current balance of the Debt and incorporated material indicating the Debt amounted to $2,065.21. Consequently, a fact issues regarding the alleged misrepresentation remains.[6]

Additionally, a fact issue remains on what version of the motion for default judgment Plaintiff received or viewed. RSIEH contends the motion for default judgment was never served on Plaintiff but was only sent to the state court. Castro Decl. at 3. If that were the case, Plaintiff would only have viewed the motion for default judgment as docketed. By contrast, Plaintiff contends he was served with the motion for default judgment. Am. Compl. [#53] ¶¶ 26, 38, 40. If this were true, Plaintiff might have received a version of the motion for default judgment including the proposed judgment, which specifically recognized Plaintiff's $57.00 payment. If Plaintiff knew Defendants were not seeking to collect the $57.00, it would be appropriate to find Plaintiff brought the claim of misrepresentation in bad faith.

---

[6] Additionally, a fact issue remains on what version of the motion for default judgment Plaintiff received or viewed. RSIEH contends the motion for default judgment was never served on Plaintiff but was only sent to the state court. Castro Decl. at 3. If that was the case, Plaintiff would only have viewed the motion for default judgment as docketed. By contrast, Plaintiff contends he was served with the motion for default judgment. Am. Compl. [#53] ¶¶ 26, 38, 40. If this were true, Plaintiff might have received a version of the motion for default judgment including the proposed judgment, which specifically recognized Plaintiff's $57.00 payment. If Plaintiff knew Defendants were not seeking to collect the $57.00, it would be appropriate to find Plaintiff brought the claim of misrepresentation in bad faith.

### ii. Alleged Failure to Mark the Debt as Disputed

PRA argues it is entitled to summary judgment because Plaintiff did not actually dispute the Debt and PRA accurately reported the Debt to the consumer debt reporting agency. PRA cites Plaintiff's deposition testimony where Plaintiff recognized PRA accurately reported the Debt balance and confirmed the Debt balance was correct. PRA Mot. Summ. J. [#62] at 6. Instead, PRA argues Plaintiff's attorneys fabricated the alleged dispute. PRA claims its evidence shows Plaintiff's attorneys submitted multiple letters to PRA with the exact same language on behalf of several clients. *Compare* Debt Letter *with* PRA Mot. Summ. J. [#62-1] App. at 2–3 (identical letters sent to PRA from other debtors).

In response, Plaintiff claims PRA misrepresents his deposition testimony and Plaintiff did indeed dispute the Debt. Pl.'s Second Resp. [#64] at 14–15. In particular, Plaintiff claims he did not know what the balance was when he indicated he disputed the debt. *Id.*[7]

Consequently, a fact issue exists on whether Plaintiff actually disputed the Debt when the Debt letter was sent to PRA. Evidence that Plaintiffs' attorneys are involved in a scheme to force settlements from debt collectors by abusing the FDCPA may well be relevant for this issue and provide support for sanctions.

### D. Bona Fide Error Defense

Regardless of whether it actually violated the FDCPA, PRA claims it is entitled to the *bona fide* error defense and summary judgment should therefore be granted in its favor. PRA Mot. Summ. J. [#62] at 14–17.

---

[7] Additionally, it is plausible—although perhaps unlikely—the Debt Letter is a form letter Plaintiff's attorneys send to debt collectors when a client indicates a debt amount is incorrect.

The FDCPA provides that "[a] debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). PRA argues it is entitled to the *bona fide error* defense because the failure to mark the Debt as disputed was "an unintentional, bona fide error" and PRA maintains policies and procedures to properly deal with disputed debts. PRA Mot. Summ. J. [#62] at 14–17. In order for PRA to prevail on a *bona fide error* defense, it must show the violation was (1) unintentional, (2) a bona fide error, and (3) made despite reasonable precautions and practices to avoid such errors. See § 1692k(c); *see also Coleman v. Credit Mgmt., LP*, No. 3:10-CV-2312-M, 2011 WL 5248219, at *4 (N.D. Tex. Nov. 2, 2011).

PRA fails to show entitlement to the *bona fide* error defense. Specifically, PRA has not shown it had reasonable precautions and practices in place to avoid errors such as misrepresenting a debt amount and failing to mark a debt as disputed. To satisfy the third element of the *bona fide* error defense, a defendant must show it had specific procedures to avoid the type of error that occurred. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010). Such procedures are "processes that have mechanical or other such 'regular orderly' steps to avoid mistakes . . . ." *Id.*

In its motion for summary judgment, PRA only offers conclusory statements it "has policies and procedures in place to ensure that PRA properly deals with disputed debts." PRA Mot. Summ. J. [#62] at 16. PRA explains it follows "protocol required by the FDCPA[,]" including verification of the debt. *Id.* These conclusory statements provide no specific evidence of PRA's procedures. Without more, the Court cannot conclude PRA employs regular, orderly steps to ensure disputed

debts are so marked. Moreover, PRA fails to allege it has policies to prevent the specific mistake at issue. PRA only asserts it has policies in place to ensure the amount it attempts "to collect from the debtor is the correct amount." *Id.* [#62-1] App. at 4–6 (Affidavit from PRA's custodian of records). PRA does not claim it has procedures to record when debts are disputed or to ensure such records are consulted when communicating with a third party.

Because PRA has not proven by a preponderance of evidence it maintained procedures reasonably adapted to report when debts are disputed, PRA has not established it is entitled to the bona fide error defense as a matter of law. Whether PRA is eligible for the *bona fide* error defense remains an issue for trial.

## Conclusion

As explained in this order, the Court grants Defendants' motions for summary judgment on Plaintiff's TDCA claims for lack of standing. However, Plaintiff's FDCPA claims against PRA and RSIEH survive Defendants' summary judgment motions. Because fact issues remain, Plaintiff's motion for summary judgment is denied.

Following trial, sanctions—including attorneys fees and costs—will be considered. This case has the appearance of being a lawsuit misusing the statutes involved, but this order simply recognizes that fact issues remain under the law, as interpreted by others. The undersigned has a very heavy civil docket of substantial cases, and there is now a time lapse between the answering of a complaint and trial in excess of two years. The undersigned is charged with the responsibility of judgments based on factual determinations including alleged damages, costs, and attorneys' fees. Those decisions will be guided by the apparent lack of good faith in this case.

Accordingly,

IT IS ORDERED that PRA and Western's Second Motion to Strike Response [#69] is DENIED;

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Summary Judgment [#64] is DENIED;

IT IS FURTHER ORDERED that Defendants Travelers and RSIEH's Motion for Summary Judgment [#36] is GRANTED IN PART and DENIED IN PART as described in this opinion;

IT IS FURTHER ORDERED that Defendants PRA and Western's Motion for Summary Judgment [#62] is GRANTED IN PART and DENIED IN PART as described in this opinion; and

IT IS FINALLY ORDERED that all other motions pending in this care are DISMISSED.

SIGNED this the 24th day of July 2017.

```
                                    /s/ Sam Sparks
                                    SAM SPARKS
                                    UNITED STATES DISTRICT JUDGE
```