IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



JOSEPH OZMUN,
          Plaintiff,

-vs-                                                      Case No. A-16-CA-940-SS

PORTFOLIO RECOVERY ASSOCIATES, LLC;
RAUSCH, STRUM, ISRAEL, ENERSON &
HORNIK LLC; WESTERN SURETY
COMPANY; and TRAVELERS CASUALTY
AND SURETY COMPANY OF AMERICA,
          Defendants.

## ORDER

BE IT REMEMBERED on the 23rd day of January 2018, the Court held a hearing in the above-styled cause and the parties appeared through counsel. Before the Court are Defendants Rausch, Sturm, Israel, Emerson, & Hornik LLC (RSIEH) and Portfolio Recovery Associates (PRA) (collectively, Defendants)' Motion to Dismiss with Prejudice or, in the Alternative, for an Order in Limine, and to Hold Plaintiff and His Lead Attorneys in Contempt [#81], Plaintiff Joseph Ozmun (Plaintiff)'s Response [#82] in opposition, and Defendants' Reply [#84] in support. Having reviewed the documents, the arguments of counsel made at the hearing, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

On August 3, 2016, Plaintiff filed the initial lawsuit in this action, alleging Defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and the Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392.001 *et seq.* Compl. [#1]. After Plaintiff submitted proposed scheduling recommendations, the Court entered a scheduling order on

October 26, 2016. Scheduling Order [#28]. The scheduling order required Plaintiff to submit a written settlement offer by November 2, 2016, and designate potential witnesses, testifying experts, and proposed exhibits by February 17, 2017. *Id.* ¶¶ 2, 5. It is undisputed Plaintiff did not designate witnesses, experts, or exhibits by February 17, 2017.

On July 24, 2017, the Court granted in part and denied in part Defendants' motion for summary judgment. Order of July 24, 2017 [#79]. Although the Court granted summary judgment for Defendants on Plaintiff's TDCA claims, the Court found fact issues precluded summary judgment on Plaintiff's FDCPA claims. *Id.*

Shortly before this Court entered its summary judgment order, Plaintiff filed two additional lawsuits against PRA. On September 28, 2017, the Court consolidated the two-later filed cases into this action. On the same day, the Court issued an amended scheduling order. Am. Scheduling Order [#80]. The amended scheduling order required Plaintiff to submit a written settlement offer by November 1, 2017. *Id.* ¶ 2. The amended scheduling order also mandated Plaintiff serve his designation of potential witnesses, testifying experts, and proposed exhibits on Defendants by November 1, 2017. *Id.* ¶ 5.

It is undisputed Plaintiff missed the November 1, 2017 deadline to designate potential witnesses, testifying experts, and proposed exhibits. *See* Resp. [#82] ¶ 6. After notifying Plaintiff's counsel they had violated the Court's amended scheduling order, Defendants filed the instant contempt motion on December 20, 2017, more than a month after Plaintiff missed the November 1, 2017 deadline. Defendants asked the Court to dismiss this lawsuit for failure to prosecute, enter an order in limine prohibiting Plaintiff from calling any witnesses or offering any exhibits at trial, or compensate Defendants for Plaintiff's noncompliance. Plaintiff responded,

arguing Defendants' requested sanctions were too extreme. However, concurrent with his response, Plaintiff served Defendants with his designations. Resp. [#82] ¶ 6 & n.2.

On January 23, 2018, the Court held a hearing to review the pending motion for contempt. Plaintiff's primary attorneys, Ms. Chatman and Michael Jacob Wood, did not attend.[1] Instead, an attorney who entered an appearance in the case only the day before the hearing responded to Defendants' motion and the Court's questions. At the conclusion of the hearing, the Court requested Defendants submit affidavits itemizing expenses necessitated by Plaintiff's failure to comply with the November 1, 2017 deadlines. Defendants have done so.

## Analysis

### I. Legal Standard—Civil Contempt

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (citations omitted); *In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009) (noting that "while the criminal contempt power is limited by 18 U.S.C. § 401, civil contempt remains a creature of inherent power"). Civil contempt is intended to "coerce the contemnor into compliance with a court order or to compensate another party for the contemnor's violation . . . ." *Id.* at 263. However, "in selecting contempt sanctions, a court is obliged to use the least possible power adequate to the end proposed." *Spallone*, 493 U.S. at 276 (citation and internal quotation marks omitted).

To establish civil contempt, "[a] movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the

---

[1] Mr. Wood did appear via phone, but he did not offer any comment or explanation for the missed deadlines.

court's order." *Whitcraft v. Brown*, 570 F.3d 268, 271–72 (5th Cir. 2009). "To determine compliance with an order, the court simply asks whether the respondent has [complied]. If he has not, the burden shifts to the respondent to rebut this conclusion, demonstrate an inability to comply, or present other relevant defenses." *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1993) (citations omitted).

## II. Application

Here, it is undisputed scheduling orders were in effect. The original scheduling order required Plaintiff to submit a written settlement offer by November 2, 2016, and designate witnesses, experts, and exhibits by February 17, 2017. Likewise, the amended scheduling order required Plaintiff to submit a written settlement offer and designate witnesses, experts, and exhibits by November 1, 2017.

Plaintiff does not dispute he failed to designate witnesses, experts, and exhibits by the deadline established by the original scheduling order and by the deadline required by the amended scheduling order. Instead, Plaintiff served Defendants with his designations only after Defendants filed their motion for contempt. Plaintiff offers no defense or apology for the failure to comply with the Court's scheduling order, merely attributing the missed deadlines to a calendaring error.

However, Plaintiff does dispute the allegation he failed to provide Defendants a written settlement offer. Plaintiff offers evidence he extended a settlement offer via email on July 10, 2017. *See* Resp. [#82-1] Ex. A (Offer Email). But Plaintiff sent that offer to a PRA employee[2] rather than PRA's attorney of record in this case. *Id.* Thus, it appears Plaintiff's counsel violated Rule 4.02 of the Texas Disciplinary Rules of Conduct, which prohibits a lawyer from communicating with an

---

[2] Although the PRA employee is in-house counsel for PRA, she is not admitted to practice before this Court and is licensed to practice law in Missouri rather than Texas. *See* Reply [#84] at 4 n.2. Moreover, the PRA employee emailed is not the PRA point-of-contact or corporate representative for this case. *Id.* at 5.

-4-

organization where the lawyer knows the organization is represented by another lawyer.[3] In addition, Plaintiff offers no evidence he attempted to extend a settlement offer as required under the amended scheduling order.

Consequently, Plaintiff, at minimum, violated the amended scheduling order by violating failing to extend a settlement offer and failing to designate witnesses, experts, and exhibits by November 1, 2017. The Court therefore holds Plaintiff and his attorneys in contempt.

The Court turns to evaluate the appropriate sanctions. Here, the Court finds an award of Defendants' expenses incurred in filing the motion for contempt is appropriate. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191(1949) (noting the civil contempt power includes the ability "to compensate [innocent parties] for losses or damages sustained by reason of noncompliance"); *see also Anthony v. Marion Cty. Gen. Hosp.*, 617 F.2d 1164, 1167 (5th Cir. 1980) ("Dismissal with prejudice, however, is an extreme sanction which is warranted only where a clear record of delay or contumacious conduct by the plaintiff exists." (citation and internal quotation marks omitted)).

Not only did Defendants notify Plaintiff of his overdue obligations,[4] Defendants spent a sizable amount of time and effort to bring Plaintiff's failure to comply to the Court's attention. Counsel for both Defendants attended the January 23rd hearing in person. In total, counsel for PRA

---

[3] Specifically, Rule 4.02(a) provides "a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A, art. 10, § 9 (Vernon 2005). The Local Rules of the Western District of Texas, in a section titled "Discipline of Attorneys," provide "[m]embers of the bar of this court and any attorney permitted to practice before this court must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct . . . ." Local Rule AT-7(a).

[4] Not only did Defendants notify Plaintiff of his failure to comply with the amended scheduling order in advance of filing the contempt motion, counsel for RSIEH noted Plaintiff failed to designate witnesses, experts, and exhibits under the original scheduling order in a hearing before this Court on June 6, 2017.

states it incurred $8,852.00 in attorneys' fees and $266.92 in expenses. Likewise, counsel for RSIEH claims it incurred $8,821.00 in attorneys' fees and $435.92 in expenses. The Court finds Defendants' accounting of the time and expense devoted to prosecuting this motion is reasonable but a total award of $18,375.84 is excessive. In light of Defendants' duplicative work in bringing a joint contempt motion, the Court awards Defendants a total of $9,187.92 in legal fees to be apportioned among Defendants as they see fit.

In addition, Defendants provided evidence of their clients' non-legal expenses in attending the January 23rd hearing. Specifically, RSIEH's representative spent $70.40 to attend the hearing. Likewise, the PRA employee who received Plaintiff's July settlement offer in error and was prepared to testify at the hearing spent $806.68 attending the hearing because she traveled from St. Louis, Missouri. Therefore, the Court awards RSIEH $70.40 and PRA $806.68 for their travel expenses.

## Conclusion

Accordingly,

IT IS ORDERED that Defendants Rausch, Sturm, Israel, Emerson, & Hornik LLC and Portfolio Recovery Associates' Motion to Dismiss with Prejudice or, in the Alternative, for an Order in Limine, and to Hold Plaintiff and His Lead Attorneys in Contempt [#81] is GRANTED IN PART;

IT IS FURTHER ORDERED that the Plaintiff Joseph Ozmun and his attorneys are HELD IN CONTEMPT of this Court's Amended Scheduling Order entered September 28, 2017 and in order to purge that contempt,

IT IS ORDERED that Plaintiff Joseph Ozmun and his attorneys shall (1) pay a total of NINE THOUSAND ONE HUNDRED EIGHTY-SEVEN AND 92/100 DOLLARS ($9,187.92) to Defendants for the legal fees incurred as a result of Plaintiff's failure to comply with this Court's scheduling order; (2) pay Rausch, Sturm, Israel, Emerson, & Hornik LLC SEVENTY AND 40/100 DOLLARS ($70.40) and pay Portfolio Recovery Associates EIGHT HUNDRED SIX AND 68/100 DOLLARS ($806.68) for expenses incurred in attending the hearing before this Court on January 23, 2018.

SIGNED this the 15th day of February 2018.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE