IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JOSEPH OZMUN,<br>Plaintiff | §<br>§ | |
| | § | |
| V. | § | CASE NUMBER 1:16-cv-00940-SS |
| | § | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC; RAUSCH, STURM, ISRAEL, ENERSON & HORNIK, LLC; WESTERN SURETY COMPANY AND TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA<br>Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

**MOTION FOR SUMMARY JUDGMENT**
**THAT PLAINTIFF TAKE NOTHING AS A MATTER OF LAW**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Defendants hereby jointly move the Court to grant summary judgment pursuant to FED. R. CIV. P. 56 that Plaintiff take nothing in this case, and in support of such motion would respectfully show the following:

**MOTION**

**A. Introduction**

1. The Court's order of February 15, 2018 (Doc. 91) held Plaintiff and his attorneys Michael J. Wood and Celetha C. Chatman in contempt, finding, *inter alia*, that attorneys Wood and Chatman had violated Rule 4.02 of the Texas Disciplinary Rules of Professional Conduct.[1] The discovery of the facts giving rise to that finding led Mr. Newburger to investigate and discover similar misconduct in other cases in the Northern District of Illinois, which in turn led counsel for all of the defendants to discover that the "dispute" letters that form the basis of Plaintiff's

[1] Defendants would note that Plaintiff's attorneys have purged themselves of contempt by paying the sanctions ordered by the Court, but it took them over a month to do so.

complaints were faxed directly to PRA at a time when Defendant RSIEH was representing PRA in two pending lawsuits against Mr. Ozmun. Those letters (which carry the false appearance of having been sent by Mr. Ozmun himself) were sent from a fax machine operated by attorneys Wood and Chatman in Chicago.[2] Thus, Plaintiff's lawyers engaged in a fabricated, direct communication with PRA without the knowledge or consent of its attorneys at RSIEH.

2. These communications were sent with the purpose of manufacturing FDCPA and TDCA. Ironically, the "disputed" debts that were the basis of the two state court actions were ultimately reduced to final summary judgments that Mr. Ozmun did not challenge or appeal. See Ex. G and H. In fact, at the time the "dispute" letters were sent, Ozmun had failed to respond to requests for admissions in the state court actions, and the automatically deemed admissions established his liability on the debts in the amounts for which he had been sued. See Ex. G and H; Javandoost Declaration. Nevertheless, Wood and Chatman faxed "dispute" letters directly to PRA, without the consent of its attorneys, asserting that "the amount you are reporting is not accurate. See Ex. E; Javandoost Declaration; Sidhu Declaration. Ozmun, Wood, and Chatman intentionally never used the word "dispute" or explained how the reported amounts (which are consistent with the judgments that were ultimately entered) were inaccurate or subject to a dispute. And, not only did Wood and Chatman fax the disputes directly to a represented party, they did not even copy PRA's attorneys of record in the state court actions.

3. Defendants assert that Plaintiff's attorneys engaged in clear violations of the Rules of Professional Conduct in order to present meritless disputes for the purpose of manufacturing FDCPA and TDCA claims. Clearly, Wood and Chatman hoped that by faxing the letters to generic

---

[2] Defendants have no reason to believe that attorneys Amy Clark and Robert Zimmer, who were not involved in this case at that time, had any involvement in the Rule 4.2 violations detailed in this motion.

PRA fax numbers, the clerks who reviewed incoming correspondence would do so without the critical eye that the attorneys at RSIEH would have applied to the letters. The PRA suits against Ozmun involve just two examples of a larger scheme by Wood and Chatman to manufacture FDCPA suits by writing directly to represented parties. They have gotten away with this so successfully that in one recent case they had the audacity to admit their conduct in a complaint. In *Gillie v. Experian Information Solutions, Inc.*, Case No. 1:18-cv-01042 in the Northern District of Illinois, Wood and Chatman alleged in a complaint that:

> 15. On March 9, 2016, LVNV, as an alleged assignee of Credit One Bank, filed a small claims lawsuit against Ms. Gillie seeking to collect an amount allegedly owed on a credit card account, account number beginning with 444796212290 (the "Account"). The case was captioned LVNV Funding, LLC v. Debra Gillie, Case No. 2016 M1 105507, filed in the Circuit Court of Cook County, Illinois, First Municipal District. ("Lawsuit")
>
> 16. On or about February 8, 2017, Ms. Gillie's counsel, on her behalf, appeared in the Lawsuit and entered a general denial of all claims alleged, as Ms. Gillie did not owe the debt.
>
> 17. *On or about March 2, 2017, Ms. Gillie, through counsel, sent LVNV a letter further disputing the balance and stating that the account tradeline was not accurate*.

*See* Exhibit I (emphasis added). *See, also*, Exhibit M, in which Ms. Chatman admits in open court that it is her *modus operandi* to communicate directly with represented parties, and in which she demonstrates not the slightest regard for the applicable rules of professional conduct. Defendants assert that when lawyers are willing to boast in judicial admissions and in open court of their conduct in communicating directly with represented parties, severe action on the art of the courts is necessary. Furthermore, Mr. Ozmun, who has no actual damages whatsoever, should not be allowed to profit from his participation in this unethical scheme.

4. Apart from these recently discovered facts, since the date of the Court's previous summary judgment decision the Sixth Circuit Court of Appeals issued its decision in *Hardin v.*

*Finkelstein, Kern, Steinberg & Cunningham, P.C.*, 707 F. App'x 855, 2017 U.S. App. LEXIS 17956 (6th Cir. 2017), holding that "[t]he adjudicative process cannot be construed as communications from the debt collector to the debtor." Therefore, PRA's state court Prayer For Relief of which Plaintiff complains cannot form the basis of an FDCPA claim.

5. The only amounts at issue in this case are statutory damages and attorney's fees. Plaintiff's First Amended Complaint seeks only statutory damages and legal fees pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA) and the Texas Debt Collection Act, Tex. Fin. Code § 392.001, *et seq.* ("TDCA"). *See* Doc. 53, pp. 11 and 12; Plaintiff's Rule 26(a)(1) disclosures (Exhibit D); Ozmun Dep. Pages 143:24 to 145:21. Defendants assert that they have no liability on the claims asserted. However, the point of this motion is not to seek a ruling on liability, *per se*. Instead, Defendants assert that even if the Court were to find that they did violate the FDCPA or the TDCA, as a matter of law the claims asserted do not merit an award of any sums of money in this case; therefore, Plaintiff should take nothing.

**B. Relief Sought**

6. Defendants seek summary judgment that Plaintiff take nothing on his TDCA claims because, without actual damages he cannot recover statutory damages under the TDCA. Defendants also seek summary judgment finding that, as a matter of law, even if Plaintiff establishes liability in this case he is entitled to no actual or statutory damages. In the alternative, Defendants seek a final summary judgment awarding Plaintiff no more than the $57 in statutory damages to which he testified in his deposition.

7. Defendants would also show that through its attorneys at RSIEH, PRA has obtained final summary judgments against Plaintiff on two of his debts. Both summary judgments were a result of deemed admissions. Plaintiff and his attorneys did not ever challenge or seek to modify

or set aside the deemed admissions, nor did they challenge[3] or appeal the judgments. Even if the Court finds that plaintiff is entitled to statutory damages, those damages should be offset by the judgments against him, which far exceed his maximum statutory recovery.

**C. Evidence and Statement of Undisputed Facts**

8. Appendix I to this motion is a Statement of Undisputed Facts setting forth the portions of the summary judgment evidence that support this motion.

9. This motion is supported by:

a. the Deposition of Plaintiff Joseph M. Ozmun that is Exhibit A to the Appendix, and the exhibits thereto ("Ozmun Dep.");

b. the Declaration of attorney Steven Javandoost that is Exhibit B to the Appendix;

c. the Declaration of Mary Elizabeth Boyle that is Exhibit C to the Appendix;

d. Plaintiff's Rule 26 disclosures that are Exhibit D to the Appendix;

e. Plaintiff's Responses to Defendant PRA's Requests for Admissions that are Exhibit E to the Appendix;

f. the Declaration of PRA's records custodian that is Exhibit F to the Appendix;

g. certified copies of the docket sheet, return of service, and final summary judgment in Travis County Court at Law Case Number C-1-CV-15-002350 that are Exhibit G to the Appendix;

[3] To be clear, the state court docket sheets (Exhibits G and H) show that Plaintiff never even responded to the summary judgment motions.

h. certified copies of the docket sheet, return of service, and final summary judgment in Travis County Court at Law Case Number C-1-CV-15-002347 that are Exhibit H to the Appendix;

i. the *Gillie* Complaint, a true copy of which is Exhibit I to the Appendix;

j. Wood Finko Thompson P.C. letterhead, a true copy of which is Exhibit J to the Appendix;

k. the Corporation File Detail Report for Wood Finko Thompson P.C., a true copy of which is Exhibit K to the Appendix;

l. the Corporation File Detail Report for Community Legal Group, Ltd., a true copy of which is Exhibit L to the Appendix; and

m. excerpt from the transcript of a February 14, 2018 hearing in *Centeno, et al. v. LVNV Funding, LLC, et al.*

Exhibits A through M are incorporated herein by reference.

**BRIEF**

10. The well-established case law interpreting the Texas Debt Collection Act mandates summary judgment that Plaintiff take nothing on his TDCA claims. The statutory factors that are to be applied in assessing statutory damages under the Fair Debt Collection Practices Act demonstrate that, as a matter of law, Plaintiff should take nothing on his FDCPA claims. However, should the Court disagree, Plaintiff should not recover more than the $57.00 in statutory damages that he testified would be adequate.

## A. Summary Judgment Standards

11. Summary judgment should be granted when the pleadings, discovery, disclosures, and any affidavits show that there is no genuine dispute as to any material fact and that the moving

party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

12. When ruling on a motion for summary judgment, the Court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Washburn*, 504 F.3d at 508. Furthermore, a court may not make credibility determinations or weigh the evidence in deciding a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Anderson*, 477 U.S. at 254-55.

13. Once the movants have made an initial showing that there is no evidence to support the respondent's case, the respondent must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. A party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

14. FED. R. CIV. P. 56 does not require the court to "sift through the record in search of evidence" to support any opposition to this motion. *Id*. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Furthermore, the Court should not consider disputed fact issues that are "irrelevant and unnecessary" in ruling on a summary judgment motion. *Id*. The inability of a responding plaintiff to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial mandates the granting of summary judgment. *Celotex*, 477 U.S. at 322-23. Applying these standards, it is clear that Movants are entitled to summary judgment that Plaintiff take nothing.

**B. Defendants Are Entitled to Summary Judgment that Plaintiff Take Nothing on His Claims Under the TDCA**

15. Although Plaintiff has accused Defendants of violating the TDCA, he has asserted no claim for actual damages in his First Amended Complaint (Doc. 53, pp. 11-12), he has disclosed no actual damages in his Rule 26 disclosures (Ex. _), and he testified to facts negating any claim for actual damages (Ozmun Dep. Pages 143:24 to 145:21). In cases 664 and 665 (which were consolidated with this one) Plaintiff has identified no damages. In fact, his interrogatory responses that are dated within eight days of the close of discovery, and which he did not supplement before the close of discovery state:

> 6. Please state the factual basis for your contention in Complaint 664 and Complaint 665 that Defendant's alleged actions caused you actual damages.
>
> RESPONSE: Objection on the basis that this is a Contention Interrogatory, which requires the answering party to commit to a position and to give factual specifics supporting its claims. The general policy is to defer contention Interrogatories until discovery is near an end. Subject to and without waiving the foregoing objection(s), see Plaintiff's Complaint 664 and Complaint 665.

16. Thus, Plaintiff sought no actual damages in Case 940, and he has disclosed no damages in the later-filed cases. The only damages sought under the TDCA are the statutory damages provided for in Tex. Fin. Code § 392.403(e), which states:

> (e) A person who successfully maintains an action under this section for violation of Section 392.101, 392.202, or 392.301(a)(3) is entitled to not less than $100 for each violation of this chapter.

17. Plaintiff is entitled to statutory damages under this section only if he "successfully maintains an action" under the specified sub-sections of the Act. However, Plaintiff *cannot* successfully maintain an action, as he did not seek or disclose any actual damages. Even if he were to prove a violation of the TDCA, he still could not recover statutory damages under Section 392.403(e). In *Elston v. Resolution Servs.*, 950 S.W.2d 180 (Tex. App.--Austin 1997, no writ) the court addressed this specific issue. Elston was able to prove a TDCA violation, but he could not prove that he had suffered any actual damages as a result of that violation. The court of appeals held that Elston was not entitled to statutory damages because he did not meet the prevailing party requirements of the Act. *Id.*

18. *Elston* is directly on-point and bars any recovery on Ozmun's TDCA claims. "[T]he plain reading of subsection (e) imposes as a prerequisite to the statutory damages the successful maintenance of a suit. Subsection (e) limits those eligible for $ 100 to those who successfully maintain an action under this section." *Marauder Corp. v. Beall*, 301 S.W.3d 817, 822-23 (Tex. App.—Dallas 2009, no pet.). When a plaintiff cannot show any actual damages. the defendants should be granted summary judgment on that plaintiff's TDCPA claim. *King v. Deutsche Bank Nat'l Tr. Co.*, No. A-14-CV-740-LY-ML, 2016 U.S. Dist. LEXIS 79971, at *42 (W.D. Tex. Feb. 23, 2016). *See also, Allen v. Dovenmuehle Mortg., Inc.*, No. 3:13-CV-4710-L, 2015 U.S. Dist. LEXIS 83795 (N.D. Tex. June 29, 2015) (dismissing the plaintiff's TDCA claim with prejudice

due to a lack of actual damages).

19. Additionally, this Court has recently confirmed Defendants' position on multiple occasions. For example, in the Court's Order regarding the first set of dispositive motions in this action, this Court found that "because Plaintiff fails to show he suffered any actual damages and is not seeking injunctive relief, he has no standing to assert claims under the TDCA. *See* Doc. 79, p. 12. Furthermore, this Court held the same in *Tejero v. Portfolio Recovery Assocs., LLC*, No. A-16-CA-767-SS, 2017 U.S. Dist. LEXIS 118316, at *11-12 (W.D. Tex. 2017) ("Because Plaintiff fails to show he suffered any actual damages, he has no standing to assert a claim under the TDCA."), and *Palomo v. Portfolio Recovery Assocs., LLC*, No A-16-CA-628-SS (W.D. Tex. 2017). Additionally, Magistrate Judge Andrew W. Austin of the Western District of Texas also held the same in *Cousins v. Portfolio Recovery Assocs., LLC*, No. 1:16-CV-85, 2017 WL 5077900 (W.D. Tex. 2017). Therefore, because Plaintiff has no evidence of actual damages, Defendants respectfully request this Court to find the same in this action.

**C. There is an absolute upper limit of $1,000 in statutory damages on Plaintiff's Claims Under the FDCPA, But No Lower Limit**

20. In an individual action under the FDCPA a prevailing plaintiff may recover statutory damages "as the court may allow, but not exceeding $ 1,000." The statute creates an absolute limit of $1,000, no matter how many violations are alleged. *Harper v. Better Bus. Servs., Inc.*, 961 F.2d 1561 (11th Cir. 1992); *Wright v. Finance Serv.*, 22 F.3d 647 (6th Cir. 1994). The $1,000 limit applies even to multi-defendant cases. *See Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365 (4th Cir. 2012); *Goodmann v. People's Bank*, 209 Fed. Appx. 111, 114, 2006 U.S. App. LEXIS 31555 (3d Cir. 2006). *See, also, Weiss v. Fein, Such, Kahn & Shepard, P.C.*, 2002 WL 449653, 2002 U.S. Dist. LEXIS 4783, (SDNY Mar. 22, 2002); *Dowling v. Kucker Kraus & Bruh, LLP*, 2005 U.S. Dist. LEXIS 11000 (SDNY June 6, 2005); *Evanauskas v. Strumpf*, 2001 U.S. Dist.

LEXIS 14326, No. 00 Civ. 1106 (JCH), 2001 WL 777477, at *6 n.6 (D. Conn. June 27, 2001).

21. $1,000 represents the upper limit of the statutory damages that a prevailing FDCPA Plaintiff might recover, but it does not represent the lower limit. *See, e.g.*, *Carroll v. Wolpoff & Abramson*, 53 F.3d 626 (4th Cir. 1995) (court awarded $50.00 for a single violation of the FDCPA); *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161 (11th Cir. 2008) (jury awarded a prevailing plaintiff $1.00 in statutory damages). In *Jerman v. Carlisle*, 2011 U.S. Dist. LEXIS 40771 (N.D. Ohio Apr. 13, 2011), after remand by the Supreme Court, the district court granted the plaintiff's motion for summary judgment, but it also granted the defendant's motion for summary judgment that the plaintiff recover zero in statutory damages. That is the relief that Defendants seek in this case.

**D. Factors to Be Considered and Facts Applicable to Those Factors**

22. The FDCPA directs that:

> In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—
>
> > (1) in any individual action under subsection (a)(2)(A) [statutory damages], [1] the frequency and persistence of noncompliance by the debt collector, [2] the nature of such noncompliance, and [3] the extent to which such noncompliance was intentional.

15 U.S.C. § 1692k(b). Application of each of these factors support an award of $0.00 in statutory damages, even if the Court finds that Defendants violated the FDCPA.

***I. Frequency and Persistence***

23. Plaintiff's claim against RSIEH is predicated solely upon the default judgment motion that RSIEH fled in one of the two underlying state court cases. The language in that motion of which Plaintiff complains stated: "[PRA] respectfully requests that this Court grant Plaintiff's Motion for Default Judgment and award Plaintiff the relief requested in Plaintiff's Petition." *See* Complaint, Docket Entry 1, at ¶ 29. Plaintiff asserts that this prayer for relief violated multiple

sections of the FDCPA because he had made a payment after he was served, rendering the balance that was due $57 less than what was requested in the Original Petition. *Id*.

24. Although the default motion prayed for the relief requested in Plaintiffs Petition, it asked the County Court at Law to grant that relief "by signing and entering the attached proposed Default Judgment." (Ex. _ to Javandoost Decl.; Ex. E to Plaintiff's First Amended Complaint, Doc. 53-1, p. 24. The default judgment that RSIEH attempted to submit with the motion properly credited the $57 payment. Javandoost Decl; Ex. _ to that declaration.

25. As to RSIEH, Plaintiff asserts a single alleged FDCPA violation. The frequency of the alleged violation was, at most, once. Consequently, there was no persistence as Plaintiff makes no assertion that the alleged failure to credit the $57 was ever repeated or that it occurred in any other context. And, at the time of the default judgment motion at issue, Ozmun's deemed admissions admitted liability for the amount requested in the petition. *See* Exhibit G; Javandoost Declaration.

26. As for PRA, Plaintiff asserts a single violation on each of his three accounts. More importantly, Plaintiff does not allege that the violation on any of the accounts was repeated. And, in addition to the fact that Plaintiff only alleges a single violation for each account, it was Plaintiff's attorneys, not PRA, who caused the alleged violations. The facts show that Plaintiff's attorneys chose to create the circumstances that led to the alleged, single violation per account. Wood and Chatman faxed Ozmun's dispute letters directly to PRA, rather than to PRA's counsel, RSIEH. Wood and Chatman's action deprived PRA of the benefit of the legal counsel it had retained. Wood and Chatman intentionally crafted the letters[4] so as not to use the word "dispute," clearly hoping

[4] Astoundingly, when asked in PRA's Requests for Admissions to admit that he did not draft the letters pertaining to Cases 664 and 665, Plaintiff answered: "Plaintiff lacks sufficient information or knowledge to admit or deny the truth of this allegation." However, See RFA Responses 1 and

to create the very claims that Ozmun asserts.

27. Furthermore, Plaintiff does not assert that PRA persisted in its alleged violations. Although PRA may not have determined that Plaintiff's letters were dispute letters given their vague and hidden language, Plaintiff does not allege that PRA continued to report his debts as undisputed once it became clear to PRA that he was actually asserting a dispute. Ironically, the only action taken with frequency and persistence is the creation of the alleged dispute letters despite there being "no legitimate reason why Plaintiff's experienced counsel should have repeatedly failed to draft a letter clearly communicating the debt was disputed." *Tejero v. Portfolio Recovery Assocs., LLC*, No. A-16-CA-767-SS, 2017 U.S. Dist. LEXIS 118316 *4 (W.D. Tex. 2017). Therefore, the frequency and persistence factor does not warrant the imposition of statutory damages against RSIEH or PRA.

***II. Nature of the Alleged Noncompliance***

28. The essence of the claim against RSIEH is essentially that it was imprecise in the prayer for relief in its motion for default judgment. However:

a. there is no evidence to rebut RSIEH's proof that the motion was accompanied by a proposed judgment which credited Ozmun's $57 payment;

b. Ozmun has never produced a copy of the default motion that was allegedly served on him; and

c. the motion was not granted.

29. Thus, the FDCPA claim is based upon a motion that did not actually seek to obtain a judgment in the wrong amount, the motion was never granted, there is no evidence that the

5. Plaintiff's response to RFA 7 admits that the fax number used to send all three dispute letters to PRA was a number that is under the care and control of his attorneys.

motion was even served on Ozmun, and the only judgment that was ever entered against Ozmun was based upon the same deemed admissions that existed on the date of the default motion, in the amount that Ozmun admits owing, and the summary judgment was never appealed. The alleged violation is technical in nature, and it caused Ozmun absolutely no harm. Indeed, Ozmun has conceded that the default judgment submitted by RSIEH reflected his $57 payment.

98
Q. All right. So what's wrong with the defendants having asked a state court to grant a judgment that included the $57 credit?
99
A. I don't know.
Q. That request certainly wouldn't have been false, would it, since it credited the $57?
A. No.
Q. No, it would not have been?
A. It would not have been false.
Q. It wouldn't have been misleading, would it?
A. No.
Q. Wouldn't have been deceptive?
A. No, sir.
Q. Nothing unfair about asking a court to grant a judgment against you in the state court case if the $57 was credited, right?
A. Yes.
Q. Yes, there is something unfair?
A. No. Yes, that's true.
Q. Okay. Paragraph 31, "The balance on the alleged debt as of November 5th, 2015 when Rausch filed the motion, was $2,008," right?
A. Yes.
Q. And that's what they asked for, right?
A. Yes, sir.

Ozmun Dep. Pages 98:23 to 99:23)

30. Based upon: (a) the default judgment that RSIEH attempted to submit to the Travis County Court at Law; and (b) Plaintiff's own deposition testimony, RSIEH made no

misrepresentations to the state court or to Plaintiff, and as a matter of law it is entitled to summary judgment that Plaintiff take nothing.

31. Even if the motion for default judgment were considered without the accompanying judgment, RSIEH would still be entitled to summary judgment. As noted above in *Hardin v. Finklestein*, *supra*, the Sixth Circuit held that a default judgment was not an actionable communication. That is consistent with Seventh Circuit case law holding that representations to courts are not actionable under the FDCPA. *See O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 944 (7th Cir. 2011) (internal citations omitted).

32. Moreover, the prayer for relief at issue referred not only to the Original Petition but also to the proposed default judgment. This court could certainly find that if there was a misrepresentation at all, it was not material. Appellate courts have consistently held that that an allegedly false statement is not actionable under the FDCPA if it is not material. *See, e.g.*, *Gabriele v. Am. Home Mortg. Servicing*, 503 Fed. Appx. 89, 94, 2012 U.S. App. LEXIS 24478, *9, 2012 WL 5908601 (2d Cir. 2012); *Jensen v. Pressler & Pressler*, 791 F.3d 413 (3d Cir. 2015); *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir. 2009); *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 (8th Cir. 2012); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010); *Hill v. Accounts Receivable Servs., LLC*, No. 0:16-4356 (8th Cir. April 19, 2018).

33. Plaintiff does not allege that the alleged defect in the prayer to the state court complaint was material. The nature of the alleged noncompliance was an immaterial ambiguity in the prayer for relief in a default judgment that was not granted and that caused Ozmun no harm.

34. As for PRA, the nature of the alleged violation is the failure to disclose that debts, two of which have been reduced to judgment, were disputed by Ozmun. However, the language allegedly disputing the letter was intentionally obscured in the letters, and the dispute was clearly manufactured, given that the letters were faxed directly to PRA instead of to its attorneys. And, as mentioned, PRA immediately marked the debts as disputed once it realized that Plaintiff's (hidden) intent. Setting aside the communication with a represented party, if Plaintiff's attorneys had sent over a letter which clearly stated "I dispute this debt," this case would have never been filed. As such, the nature of PRA's alleged noncompliance is one of inculpability. Therefore, the claims at issue do not warrant statutory damages against RSIEH or PRA.

***III. The Extent to Which the Alleged Noncompliance Was Intentional***

35. With regard to RSIEH it is clear that there was no intent to misrepresent the debt. RSIEH attempted to submit a judgment which credited the $57 payment. The fact that the judgment that was submitted was in the correct amount shows that there was no intent to violate.

36. As for PRA, the absence of intent is found in the fact that Ozmun and his counsel intentionally deprived PRA of the benefit of its counsel by doing an end-run around RSIEH. There is no allegation or evidence that PRA failed to update the trade lines as soon as it became aware of the fact that Ozmun was attempting to dispute his debts. Therefore, the claims at issue do not warrant statutory damages against RSIEH or PRA.

**E. Plaintiff Should be Denied Statutory Damages**

37. In *Jerman*, *supra*, the district court granted summary judgment in favor of the plaintiff on the issue of liability. However, on the issue of damages the Court granted summary judgment for the defendants, finding as a matter of law the plaintiff was not entitled to any statutory damages. Upon consideration of the factors set forth above the Court should find that as a matter

of law Plaintiff is not entitled to and statutory damages; therefore, since he has no actual damages, he should take nothing in this case.

**F. Alternatively, Plaintiff should be summarily Awarded $57**

38. Defendants contend that the correct amount of statutory damages in this case is zero. However, should the Court disagree then Defendants request that the Court grant summary judgment that Plaintiff recover the $57 in statutory damages that he testified was sufficient:

OZMUN, JOSEPH, (Pages 136:9 to 137:13)
136
Q. The FDCPA sets a cap on statutory damages of $1,000. Are you seeking more than?
$1,000 in statutory damages?
A. I just don't know.
Q. Well, how much do you want? Forget what your lawyers are asking for you, what do you think you ought to get?
A. I honestly can't answer that.
Q. You think a dollar is enough?
A. A dollar? Maybe more.
Q. How about 57? Would that be good?
A. At least.
Q. Do you think that would be fair?
A. $57?
Q. Yes, sir.
A. Probably not.
Q. Well, your complaint is about $57,
137
right?
A. And my reputation.
Q. What reputation is that?
A. That was harmed with adverse credit bureau reporting.
Q. Other than credit reporting, is there any other harm to your reputation?
A. I suppose that's the major part of it.
Q. Okay. Rausch didn't do any credit reporting, so do you want more than $57 from Rausch?
A. That's probably the extent of their liability, I would think.

**WHEREFORE, PREMISES CONSIDERED**, Defendants pray that the Court grant summary judgment that Plaintiff take nothing against them in this case. In the alternative, Defendants pray that the Court end the case by summarily awarding Plaintiff $57 as his total award in this case. Should the Court grant either such order Defendants further pray that the Court order that Defendants may submit an application for an award of fees and expenses in this case. Defendants further pray for all such other and further relief, at law or in equity, as to which they may be justly entitled.

Respectfully submitted,

/s/Manuel H. Newburger
Manuel H. Newburger
TBN 14946500
Barron & Newburger, P.C.
7320 N. MoPac Expy., Suite 400
Austin, Texas 78731
(512) 476-9103
Fax: (512) 279-0310
mnewburger@bn-lawyers.com

ATTORNEYS FOR DEFENDANTS RAUSCH, STURM, ISRAEL, ENERSON & HORNIK, LLC and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

/s/ Robbie Malone
Robbie Malone
Email: rmalone@mamlaw.com
Eugene Xerxes Martin, IV
Email: xmartin@mamlaw.com
Cooper M. Walker
Email: cwalker@mamlaw.com

Malone Akerly Martin PLLC
NCX Building, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631

ATTORNEYS FOR DEFENDANTS PORTFOLIO RECOVERY ASSOCIATES, LLC and WESTERN SURETY COMPANY

**CERTIFICATE OF SERVICE**

A true copy of the foregoing Motion was served on the persons on the service list below through via the Court's ECF system on the 20th day of April, 2018.

/s/ Manuel H. Newburger
Manuel H. Newburger

**SERVICE LIST**

**Celetha Chatman**
and
**Michael Jacob Wood**
Community Lawyers Group, Ltd
73 West Monroe
Chicago, IL 60603
Attorneys for Joseph Ozmun

**Robert Alan Zimmer, Jr.**
Zimmer & Associates
707 West 10th Street
Austin, TX 78701
Attorney for Joseph Ozmun

**Tyler Hickle**
Law Office Tyler Hickle, PLLC
4005 C Banister Lane, Suite 120C
Austin, TX 78704
Attorney for Joseph Ozmun

**Amy E. Clark**
Amy Clark Law
11801 Domain Blvd, 3rd Floor
Austin, Texas 78758
Phone:(512) 850-5290
Fax: (626) 737-6030
amy@amyclarklaw.com
Attorney for Joseph Ozmun

**Robbie Malone**
and
**Eugene Xerxes Martin, IV**
and
**Cooper M. Walker**
Malone Akerly Martin, PLLC
NCX Building
8750 N. Central Expy., Suite 1850
Dallas, TX 75231
Attorneys for Portfolio Recovery Associates, LLC
and
Western Surety Company