# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **JOSEPH OZMUN,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CASE NO.: 1:16-cv-00940-SS** |
| **PORTFOLIO RECOVERY** | § | |
| **ASSOCIATES, LLC and RAUSCH,** | § | |
| **STRUM, ISRAEL, ENERSON & HORNIK** | § | |
| **LLC,** | § | |
| *Defendants.* | § | |

## DEFENDANTS' MOTION FOR AN AWARD OF FEES AND COSTS

Defendants Portfolio Recovery Associates, LLC ("PRA") and Rausch, Strum, Israel, Enerson & Hornik LLC ("RSIEH") (together known as "Defendants") jointly move the Court for an award of their fees and costs in this case, and in support of such motion would respectfully show the following:

## MOTION

1.      Movants are Portfolio Recovery Associates, LLC and Rausch, Sturm, Israel, Enerson & Hornik, LLC.[1] Respondents are Joseph Ozmun, Celetha Chatman, Michael Jacob Wood, and Community Legal Group, Ltd.  d/b/a Community Lawyers Group, Ltd.  Attorney  Ruth A. Kollman ("Kollman") is also a respondent for her conduct in connection with filing a meritless motion to recuse in this case.

---

[1] Rausch, Sturm, Israel, Enerson & Hornik, LLC is now known as Rausch, Sturm, Israel, Enerson & Hornik, LLP.

2.      Defendants seek fees on four grounds.  First, Plaintiff is liable for fees "reasonable in relation to the work expended and costs" pursuant to 15 U.S.C. § 1692k(a)(3). Second, Plaintiff is liable for "attorney's fees reasonably related to the work performed and costs" pursuant to Tex. Fin. Code § 392.403(c).  Third, all of the respondents are liable for fees and costs pursuant to Fed. R. Civ. P. 11.  Fourth, Respondents Chatman, Wood, and Community Legal Group, Ltd. ("the Lawyer Respondents") are liable for costs, expenses, and attorneys' fees reasonably incurred pursuant to 28 U.S.C. § 1927.  Kollman also has liability under Rule 11 and Section 1927, but only to a limited degree.

3.      This motion is supported by the affidavits of Manuel H. Newburger (Exhibit A) and Robbie Malone (Exhibit B) and the exhibits thereto, all of which are incorporated herein by reference as if fully set forth verbatim.

## FACTS – THE TRAIL OF BAD FAITH

4.      From beginning to end, this case has distinguished itself by the pattern and practice of bad faith conduct by Respondents.  Such conduct includes the following:

    a.  manufacturing this litigation by creating letters that falsely purported to come from Plaintiff, but which were actually created and faxed directly to PRA by the Lawyer Respondents;

    b.  faxing those letters directly to PRA at a time when the Lawyer Respondents knew that PRA was represented by RSIEH;

    c.  deliberately drafting those letters in an ambiguous manner to cause PRA to believe that Plaintiff was complaining of the accuracy of a credit report rather than disputing his debt;

    d.  manufacturing non-existent, groundless disputes that were contrary to Plaintiff's deemed admissions in the underlying state court cases;

    e.  manufacturing non-existent, groundless disputes that were contrary to the facts, as shown by the final summary judgments in the underlying state court cases (which Plaintiff did not oppose);

f.  demanding, pre-answer, $6,500.00 to settle this case;

g.  agreeing to that $6,500.00 settlement and then refusing to agree to a general release of claims;

h.  the Lawyer Respondents' failure to involve Plaintiff in the $6,500.00 settlement negotiations or inform him of such negotiations until months after the fact;

i.  suing RSIEH's bond issuer (Defendant Travelers) when there was no corresponding TDCA claim to give rise to liability on Travelers' bond;

j.  amending Plaintiff's Complaint and filing a First Amended Complaint that asserted a TDCA claim against RSIEH and Travelers, notwithstanding both Plaintiff's lack of any actual damages and his testimony that such a claim did not exist;

k.  Suing all defendants under the TDCA, notwithstanding (i) Plaintiff's failure to assert claims for actual damages or injunctive relief and (ii) the well-established case law holding that actual damages or injunctive relief are prerequisites to statutory damages under the TDCA;

l.  Asserting claims on Movants' third-party debt collector bonds notwithstanding the fact that: (i) Plaintiff asserted no claim for actual damages in this case; and (ii) damages resulting from a violation of the TDCA are a condition for a claim on the bond;

m.  asserting credit injury but failing to make timely production of an unredacted copy of Plaintiff's alleged credit report;

n.  failing to take any steps to depose or identify for trial a sponsoring witness who could have authenticated the credit reports that they designated as trial exhibits;

o.  violating the Court's original scheduling order by failing (and, in fact, refusing) to conduct the initial Rule 26 conference by the deadline set in the scheduling order;

p.  violating Rule 26 by refusing to discuss the matters specified in that rule in the initial Rule 26 conference;

q.  failing to respond to PRA's motions to consolidate;

r.  failing to comply with the Court's amended scheduling order;

s.  communicating directly with PRA attorney Karen Mayfield Jones concerning settlement of this case without first obtaining the consent of PRA's attorneys in this case;[2]

t.  making untimely designations of exhibits in this case;

u.  designating Manuel Newburger and Robbie Malone as trial witnesses in this case in retaliation for the proper designation of Celetha Chatman and Michael Wood as witnesses;

v.  Waiting until the morning of a hearing to confer on the motion to recuse;

w.  Failing to confer in good faith and through an attorney who is admitted in this district regarding the motion to recuse;

x.  Filing the motion to recuse just hours before the scheduled hearing;

y.  Filing the motion to recuse through an attorney who is neither licensed in this district or admitted *pro hac vice* in this case;

z.  demanding $3,250.00 plus forgiveness of Plaintiff's debts to PRA to settle this case, notwithstanding the fact that: (i) the monetary demand exceeds the amount of statutory damages set forth in Plaintiff's Rule 26 disclosures;[3] (ii) there is no basis in fact or law for conditioning settlement of an FDCPA case on debt cancellation; and (iii) no claim for debt cancellation was made (or could have been made) in this case;

aa.  opposing RSIEH's motion for summary judgment and continuing to prosecute this case against RSIEH when no set of Rule 26 disclosures served by Plaintiff in this case ever disclosed any damages that were being sought from RSIEH; and

bb.  failing to move to dismiss this case with prejudice after receiving from Defendants all that was demanded as a condition of dismissal.

---

[2] Respondents have already been sanctioned for this conduct. Movants do not seek to recover fees that were already awarded by the Court and paid by Respondents. However, they assert that the conduct remains relevant for the purpose of assessing bad faith.

[3] Plaintiff served three sets of Rule 26 disclosures. The last (his Second Amended Rule 26(a)(1) Disclosures) asserted $1,000 in statutory damages per subject account under the FDCPA from Defendant Portfolio Recovery Associates, LLC. No set of disclosures by Plaintiff asserted a right to any statutory damages recovery against RSIEH.

## BRIEF

1.     The "assessment of frivolousness and attorneys' fees are matters best left to the sound discretion of the trial court after a thorough evaluation of the record and appropriate factfinding. *Arnold v. Burger King Corp.*, 719 F.2d 63, 66 (4th Cir. 1983). *See, also, Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405  (1990) ("an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination").

2.     A district court's decision to impose sanctions is entitled to substantial deference. *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 210 (4th Cir. 1988). "The perspective of a district court is singular. The trial judge is in the best position to review the factual circumstances and render an informed judgment as he is intimately involved with the case, the litigants, and the attorneys on a daily basis." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988) (en banc).  The Fifth Circuit has recognized that "the district court will have a better grasp of what is acceptable trial-level practice among litigating members of the bar than will appellate judges." *Id.*, *citing Eastway Construction Corp. v. City of New York*, 637 F. Supp. 558, 566 (E.D.N.Y.1986). Certainly, in this case, the Court has been a direct witness to the pattern of bad faith and harassing conduct.

### A.  Bad Faith Under the FDCPA

3.     The FDCPA allows a prevailing plaintiff to recover fees and costs.  15 U.S.C. § 1692k(a)(3).  Plaintiff is not a prevailing party.  In fact, he agreed to dismiss his suit with prejudice in exchange for $1,250.00, a result that involved no finding of liability, no judgment in his favor, and a recovery of less than the sum of $1,000.00 plus costs.  As Defendants will address in their opposition to Plaintiff's fee request, this is a poor outcome, indeed, for a plaintiff who would have

received $6,500.00 prior to Defendants' answer had Respondent Chatman not refused to agree to a full release of claims.

4.      "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3).  Just as 28 U.S.C. § 1927 (addressed below) is aimed at attorneys, Section 1692k(a)(3) is aimed at plaintiffs.  To prevail under this section Defendants must prove two elements: (1) that the suit was brought in bad faith; and (2) that it was also brought for the purpose of harassment.  *Id.*  The evidence reveals that each of these elements is present.

5.      "The terms 'bad faith' and 'harassment' connote 'more than simply bad judgment or negligence'; they imply 'the conscious doing of a wrong because of a dishonest purpose or moral obliquity.'" *Rodriguez v. IC Sys.*, No. EP-16-CV-00186-DCG, 2017 U.S. Dist. LEXIS 73119, 2017 WL 2105679, at *2 (W.D. Tex. May 12, 2017), *citing Cunningham v. Credit Mgmt., L.P.*, No. 3:09-CV-1497-G, 2010 U.S. Dist. LEXIS 102329, 2010 WL 3791049, at *2 (N.D. Tex. Sept. 27, 2010); and *Grant v. Barro*, No. 07-194-JJBDLD, 2007 U.S. Dist. LEXIS 81018, 2007 WL 3244986, at *1 (M.D. La. Nov. 1, 2007).  Although Ozmun and the Lawyer Respondents have demonstrated no shortage of bad judgment and negligence, the conduct forming the basis of this motion crosses the line into bad faith and harassment.

6.      Defendants acknowledge that mere disagreement with Respondents' approach to litigation is insufficient to justify an award of "bad faith" fees under the FDCPA.  *Perry v. Stewart Title Company*, 756 F.2d 1197, 1211 (5th Cir. 1985), *modified on other grounds*, 761 F.2d 237 (5th Cir. 1985).  Defendants wish to be clear that this motion is not predicated upon mere disagreements as to litigation strategy or style.  Rather, bad faith and harassment may be found in

conduct of Plaintiff and the Lawyer Respondents that reflects far more than bad judgment or poor case strategy. The following conduct supports the conclusion that Plaintiff and the Lawyer Respondents brought this action in bad faith and for the purpose of harassment:

a. Plaintiff's counsel demanded $6,500.00 to settle this case prior to Defendants' answers. There was no basis in fact or law for such a demand. Courts have consistently held that the FDCPA's $1,000.00 cap applies to the "action," regardless of the number of claims asserted. *See, e.g., Harper v. Better Bus. Servs., Inc.*, 961 F.2d 1561 (11th Cir. 1992); *Wright v. Finance Serv.*, 22 F.3d 647 (6th Cir. 1994); *Picht v. Hawks*, 77 F. Supp. 2d 1041, 1045 (D. Minn. 1999), *aff'd*, 236 F.3d 446 (8th Cir. 2001); *Martinez v. Scott*, No. H-10-1619, 2011 U.S. Dist. LEXIS 90630, at *11 (S.D. Tex. Aug. 12, 2011). The presence of multiple defendants does not expand the cap, as the statutory limit is tied to the "action," not the number of alleged violators. *See Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365 (4th Cir. 2012); *Goodmann v. People's Bank*, 209 Fed. Appx. 111, 114, 2006 U.S. App. LEXIS 31555 (3d Cir. 2006). *See, also*, *Weiss v. Fein, Such, Kahn & Shepard, P.C.*, 2002 WL 449653, 2002 U.S. Dist. LEXIS 4783, (SDNY Mar. 22, 2002); *Dowling v. Kucker Kraus & Bruh, LLP*, 2005 U.S. Dist. LEXIS 11000 (SDNY June 6, 2005); *Evanauskas v. Strumpf*, 2001 U.S. Dist. LEXIS 14326, No. 00 Civ. 1106 (JCH), 2001 WL 777477, at *6 n.6 (D. Conn. June 27, 2001). At the pre-answer stage, Plaintiff's counsel could not have incurred $5,500.00 in time and expenses in this case. Much of the Complaint is substantially similar to the Complaint in Case No. 1:16-cv-00767-SS (*Tejero v. Portfolio Recovery Associates, LLC and Western Surety*

*Company*) with which this court is familiar, and Respondents could not reasonably have incurred substantial time or expense to draft a complaint which was predicated upon one line of a credit report and one line of a state court pleading.  Plaintiff had made no claim for actual damages, and at the pre-answer stage there was no basis in fact or law for a $6,500.00 demand.

b.   After agreeing to accept $6,500.00 in full settlement, Ms. Chatman refused to agree to a general release, thereby causing the settlement to fail. *See* ECF Doc. 21, 22, and 25.  Plaintiff and the Lawyer Respondents never provided a basis for refusing a general release. In negotiating the $6,500.00 settlement the Lawyer Respondents did not disclose that they secretly had two other claims for Ozmun against PRA waiting in the wings.   They had no other claims against RSIEH, and there simply was no justification for rejecting the general release as to RSIEH.  All of such conduct evidences bad faith.  All of such conduct caused the settlement to fail and led to almost two years of litigation, culminating in a payment to Ozmun of only $1,250.00.

c.   The Lawyer Respondents negotiated the $6,500.00 settlement and then caused it to fail all without the knowledge or participation of their client. *See* ECG Doc. 101-2, Ozmun Deposition, Pages 150:11 to 153:4   The responsibility to convey the existence and terms of settlement offers to clients is one of an attorney's most important duties. "Consistent with ordinary skill and knowledge, it [is] incumbent upon [an attorney], as a matter of law, to communicate all settlement offers to his client." *Rizzo v. Haines*, 520 Pa. 484, 500, 555 A.2d 58 (1989), *citing Whiteaker v. State*, 382 N.W.2d 112 (Iowa 1986); *Joos v. Auto-Owners*

*Ins. Co.*, 94 Mich.App. 419, 288 N.W.2d 443 (1979); *Rubenstein & Rubenstein v. Papadakos*, 31 A.D.2d 615, 295 N.Y.S.2d 876 (1968), aff'd, 25 N.Y.2d 751, 250 N.E.2d 570, 303 N.Y.S.2d 508 (1969).  *See, also*, Tex. Disc. R. Prof. Cond. 1.02((a)(2).[4] This is not simply a matter of legal ethics, but "a duty which a lawyer owes to his adversaries and the court as well as his clients.  Breach of this obligation should be viewed as 'a blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly'" *Deadwyler v. Volkswagen of Am., Inc.*, 134 F.R.D. 128, 140 (W.D.N.C. 1991), *aff'd sub nom. Moore v. Volkswagen of Am., Inc.*, 966 F.2d 1443 (4th Cir. 1992), *quoting Warner Brothers, Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1128 (2d Cir. 1989).  *Deadwyler* was cited with approval on this very point in a FDCPA case in this circuit. *See Byes v. Telecheck Recovery Servs.*, 173 F.R.D. 421 (E.D. La. 1997).

d.  Following the Court's second summary judgment order, on June 28, 2018, Defendants tendered in full settlement of this case "the total sum of $1,000.00, with the award of fees and costs of the parties to be determined by the Court." *See* Newburger Dec., Ex. E. Plaintiff rejected that offer.  *See* Newburger Dec., Ex.  On, July 3, 2018, when the Court denied Plaintiff's motion to stay, Defendants renewed that offer.  In response, on July 6, 2018, Plaintiff again rejected the $1,000.00 and made a settlement demand for $3,225.00 plus

---

[4] The official Comment to Rule 1.02 states, in pertinent part: (*see bottom of subsequent page*)
Except where prior communications have made it clear that a particular proposal would be unacceptable to the client, a lawyer is obligated to communicate any settlement offer to the client in a civil case; and a lawyer has a comparable responsibility with respect to a proposed plea bargain in a criminal case.

agreement that PRA would not collect or report on Ozmun's three consumer debts (two of which have been reduced to final judgments), with the parties to file motions to the court for fees and costs. *See* Newburger Dec., Ex. G. Even if this court (or the Fifth Circuit) were to reject the entire line of cases limiting Ozmun to a maximum of $1,000.00 and instead accept Respondents' arguments as to the statutory damages Ozmun could recover, the maximum amount of Ozmun's claim under his own theory would have been $3,000.00 (setting aside the fact that he never disclosed any statutory damages as to RSIEH).[5] Nevertheless, Ozmun demanded $3,225.00 plus forgiveness of over $10,000.00 in debt. Thus, Ozmun tried to use this case not only to extract more than what even he says the law would allow, but as a debt-elimination scheme. Such conduct is not consistent with the text or goals of the FDCPA. *See* 15 U.S.C. §§ 1692 and 1692k.

e. Plaintiff repeatedly demanded money from RSIEH, yet through three sets of disclosures (Newburger Dec., Ex. A) he did not ever disclose a claim for a penny of relief from RSIEH. Either Plaintiff made his Rule 26 disclosures in bad faith or asserted his claim in bad faith, but as recently as May 11, 2018,

---

[5] Defendants would also point out the impropriety of filing three separate actions against PRA instead of bringing all of the claims in a single action. The Lawyer Respondents recently had one of their Northern District of Illinois cases dismissed with prejudice for similar conduct. *See Horia v. Nationwide Credit & Collection, Inc.*, No. 17-cv-08355, 2018 U.S. Dist. LEXIS 127678 (N.D. Ill. July 31, 2018). They were also recently sanctioned for similar conduct. In *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, No. 17 CV 773, 2018 U.S. Dist. LEXIS 136910 (N.D. Ill. Aug. 14, 2018), the court found that Wood and Chatman should be sanctioned under Rule 11 and Section 1927 for splitting the FDCPA claims of a plaintiff into two suits.

Plaintiff's Second Amended Rule 26(a)(1) Disclosures stated that his computation of damages was:

> Plaintiff is entitled to $1,000 in statutory damages per subject account under the FDCPA from Defendant Portfolio Recovery Associates, LLC pursuant to 15 U.S.C. § 1692k(a)(2), statutory damages of not less than $100 under the Texas Finance Code from Defendant, and reasonable attorneys' fees, and costs.

No other statement of damages was made. Throughout this entire case Plaintiff has not disclosed a computation of any statutory damages from RSIEH. The continued prosecution of claims against RSIEH under such circumstances was bad faith and harassing conduct.

f.  Plaintiff opposed both of RSIEH's motions for summary judgment, notwithstanding his complete failure to disclose any actual or statutory damages claimed from RSIEH. Such opposition forced RSIEH to continue to defend this action and to prepare for trial.

g.  When Defendants properly designated Michael Wood and Celetha Chatman as trial witnesses, Plaintiff designated Manuel Newburger and Robbie Malone as trial witnesses. The designation of Wood and Chatman was proper as they drafted and faxed the alleged dispute letters from Plaintiff, notwithstanding their knowledge of RSIEH's representation of PRA. Wood and Chatman were proper witnesses as to the fraudulent letters, the ethical violations inherent in the sending of those letters, and the deliberate use of ambiguous language to create confusion as to whether the letters were disputes. Wood and Chatman deliberately made themselves fact witnesses by conspiring with Ozmun to manufacture bogus disputes. In contrast, Newburger and Malone's

involvement with Ozmun began with the defense of this litigation.  They are not and could not have been witnesses to a single triable fact.  Their designation was purely retaliatory and was intended to harass Defendants.  In support of this assertion Defendants offer Newburger Dec., Ex. C, a July 1, 2018 email from Michael Wood which makes it clear that the designation of Newburger and Malone as witnesses was because he and Chatman had been designated and not because they were witnesses as to any triable fact.[6]

7.     Bad faith and harassment can be found in two other aspects of Respondents' conduct.  First, there are the "dispute" letters on which the claims under 15 U.S.C. § 1692e(8) are based.  The letters purport to have been written and sent by Plaintiff.  In fact, the Lawyer Respondents wrote the letters and faxed them to PRA, as evidenced by the following responses in this case to PRA's Requests for Admissions (ECF Doc. 101-6):

1.  Admit that you did not write the letter marked as Exhibit B to Complaint 664.

    RESPONSE: Plaintiff lacks sufficient information or knowledge to admit or deny the truth of this allegation.

2.  Admit that you did not personally cause the letter attached as Exhibit B to Complaint 664 to be delivered to PRA.

    RESPONSE: Objection, this Request is misleading, as Defendant has defined "you" in such a way that third parties, including Plaintiff's attorneys, are "you". Subject to and without waiving the foregoing, admit.

7.  Admit that the fax number (312) 476-1362 is under the care and control of the attorneys that represent you in this lawsuit.

---

[6] The suggestion that either Newburger or Malone could have been proper witnesses as to the conspiracy between the Lawyer Respondents and their clients such as Ozmun is simply ridiculous. In every case in which such conspiracies occurred it happened prior to the retention of Newburger or Malone.  The designation of Defendants' counsel as trial witnesses was nothing but petty payback for having called to the Court's attention the Lawyer Respondents' repeated violations of Texas RPC 4.02 and Illinois RPC 4.2.

RESPONSE: Admit.

8. Admit that the letter marked as Exhibit B to Complaint 664 was transmitted to PRA via fax number (312) 476-1362 on or about May 31, 2016.

RESPONSE: Admit.

9. Admit that the letter marked as Exhibit B to Complaint 665 was transmitted to PRA via fax number (312) 476-1362 on or about May 31, 2016.

RESPONSE: Admit.

8.     To the extent that it is the conduct of Plaintiff's lawyers and not Plaintiff, himself, that is at issue the distinction is meaningless.  "An attorney-client relationship is an agency relationship and generally the acts and omissions within the scope of his or her employment are regarded as the clients' acts." *SW. Bell Tel. Co. v. Wilson*, 768 S.W.2d 755, 759 (Tex. App. 1988), *citing Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986).  In the words of the Supreme Court, the attorney-client relationship "is a quintessential principal-agent relationship/" *Commissioner v. Banks*, 543 U.S. 426, 429, 125 S. Ct. 826, 828 (2005).

9.     Whether as a result of his own direct participation in the bad faith, harassing conduct at issue, or as a result of the conduct of the attorneys who are his agents, Plaintiff is liable for fees under Section 1692k(a)(3) of the FDCPA.

**B.  Bad Faith Under the TDCA**

10.     Tex. Fin. Code § 392.403(c) provides: "On a finding by a court that an action under this section was brought in bad faith or for purposes of harassment, the court shall award the defendant attorney's fees reasonably related to the work performed and costs." The use of the disjunctive provides a critical distinction between the state and federal acts.  Under the state act Defendants need prove only that this action was brought in bad faith or for purposes of harassment,

but Defendants need not prove both.   The same factors that mandate an award of fees against Plaintiff under the FDCPA also mandate an award of fees and costs under the TDCA.   However, the deficiencies in Plaintiff's TDCA claim are so great that it, alone, would be sufficient to warrant an award of fees.

11.   The following conduct supports the conclusion that Plaintiff and the Lawyer Respondents brought Plaintiff's TDCA claims in bad faith and for the purpose of harassment:

    a.   Plaintiff sued Travelers Casualty and Surety Company of America, the issuer of RSIEH's Texas third-party debt collector bond.   However, Plaintiff did not assert any claim against RSIEH that would trigger that bond.   Even when Plaintiff amended his Complaint and added a claim against RSIEH he failed to allege any actual damages.   The third-party debt collector bond under the TDCA is for the benefit of "any person who is damaged by a violation of this chapter." Tex. Fin. Code § 392.101.   There was no basis in fact or law for suing Travelers (and forcing RSIEH to defend its bond issuer) on a claim under the TDCA that alleged **no** damages.

    b.   Plaintiff brought claims against all defendants under the TDCA, even though he asserted no actual damages and no basis for injunctive relief.   The law in Texas is well-established that under such circumstances a plaintiff cannot prevail under the TDCA.   *See, e.g., Elston v. Resolution Servs.*, 950 S.W.2d 180 (Tex. App.--Austin 1997, no writ); *King v. Deutsche Bank Nat'l Tr. Co.*, No. A-14-CV-740-LY-ML, 2016 U.S. Dist. LEXIS 79971, at *42 (W.D. Tex. Feb. 23, 2016).   *See also, Allen v. Dovenmuehle Mortg., Inc.*, No. 3:13-CV-4710-L, 2015 U.S. Dist. LEXIS 83795 (N.D. Tex. June 29, 2015).

c.   Plaintiff, in his Amended Complaint, sought from RSIEH "Statutory damages from each Defendant of not less than $100 for each violation pursuant to TDCA § 392.403(e)".  However, Tex. Fin. Code § 392.403(e) provides:

> (e) A person who successfully maintains an action under this section for violation of Section 392.101, 392.202, or 392.301(a)(3) is entitled to not less than $100 for each violation of this chapter.

Plaintiff asserted no claim against RSIEH under Sections 392.101, 392.202, or 392.301(a)(3) of the Finance Code, and there was no basis in fact or law for the assertion of a claim for statutory damages against RSIEH under § 392.403(e).

d.   As is set forth above, the  "dispute" letters on which the TDCA claims against PRA were based were deliberately ambiguous letters, crafted by the Lawyer Respondents and sent in a manner designed to create the false impression that they came from Plaintiff himself.

e.   The letters were sent directly to PRA at a time when Plaintiff and the Lawyer Respondents knew that PRA was represented by RSIEH, in violation of Rule 4.02 of the Texas Disciplinary Rules of Professional Conduct and Rule 4.2 of the Illinois Rules of Professional Conduct.

f.   To the extent that the ambiguous letters were disputes (even though they did not use the word "dispute") they were fraudulent and misleading.  Plaintiff did not dispute the debts with the issuer, he did not deny the requests for admissions that were served on him in the underlying state court cases, and he did not contest the motions which led to final summary judgments against him in the underlying state court cases. *See* ECF 101-3 (Javandoost Declaration).

12.     Under such circumstances, an award of a defendant's fees and costs is entirely appropriate.  *See, e.g., Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 471 (W.D. Tex. 2011) (awarding attorney's fees to the defendant because the "complaint does not make any substantial claims under the Act" and "simply references the 'laundry list' section of the Act, without specifically identifying how [the defendant] is supposed to have violated the act, or what the alleged violation might be.").  To the extent that it is the conduct of Plaintiff's lawyers and not Plaintiff, himself, that is at issue the distinction is meaningless for the reasons stated above.  *See SW. Bell Tel. Co. v. Wilson, supra*; *Commissioner v. Banks, supra*,.

13.     Whether as a result of his own direct participation in the bad faith, harassing conduct at issue, or as a result of the conduct of the attorneys who are his agents, Plaintiff is liable for fees under Tex. Fin. Code § 392.403(c).

## C.  Rule 11

14.      Fed. R. Civ. P. 11 provides, in pertinent part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> * * *

15.     In signing and filing the pleadings in this case, Plaintiff's attorneys represented to the Court that (1) the pleadings were not being presented for an improper purpose; (2) the legal

contentions in the pleadings were warranted by existing law (or that there was a good-faith argument to extend or modify existing law); and, (3) there was admissible evidence to support any factual allegations. Fed. R. Civ. P. 11(b). While "Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," it is intended to prevent abuse of the legal system and unethical conduct by counsel. Adv. Comm. Notes to 1983 Amendment of Fed. R. Civ. P. 11(b); *Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1198-94 (5th Cir. 1996).

16.     "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of federal court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). The Court must carefully choose sanctions that further the purpose of the Rule and should impose the least severe sanctions that would adequately deter its violation. *See Thomas v. Capital Security Servs., Inc.,* 836 F.2d 866, 875-76 (5th Cir. 1988). When warranted, sanctions may include an order directing payment to an opposing party of some or all of the reasonable attorney's fees or costs incurred as a result of the violation. *See Merriman v. Security Ins. Co. of Hartford*, 100 F.3d 1187, 1191 (5th Cir. 1996); Fed. R. Civ. P. 11(c)(2).

17.     Before a party may file a Rule 11 motion, the movant is required to give at least twenty-one days' notice to the intended respondents that it will seek sanctions, in order to give the offending parties time to determine whether they will withdraw or correct the offending pleading. Fed. R. Civ. P. 11(c)(2).  Two separate Rule 11 safe harbor notices were sent to the Lawyer Respondents.  Both were ignored.  Both were sent prior to this year.

18.     The Court also possesses inherent power to "protect the efficient and orderly administration of justice . . . to command respect for the court's orders, judgments, procedures,

and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). That inherent power includes "the power to levy sanctions in response to abusive litigation practices." *See Mendoza v. Lynaugh*, 989 F.2d 191, 195-97 (5th Cir. 1993).

19.     In determining whether to impose sanctions, a court uses an objective standard to assess if it was objectively reasonable for an attorney to advance a claim. In other words, if "a reasonable amount of research would have revealed to the attorney that there was no legal foundation for the position taken," then the attorney has violated Rule 11. *Smith v. Our Lady of the Lake Hospital, Inc.*, 960 F.2d 439, 444 (5th Cir.1992) (noting that although an attorney "need not provide an absolute guarantee of the correctness of the legal theory advanced in the paper he files ... [he] must certify that he conducted reasonable inquiry into the relevant law.").

20.     Once a Rule 11 violation is established, a court must apply sanctions to the offending party, using the least severe sanctions available. In the Fifth Circuit, imposition of reasonable attorneys' fees and costs is the least severe sanction for wholly frivolous lawsuits. *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001); *Granader v. McBee*, 23 F.3d 120, 124 (5th Cir. 1994).

21.     Fed. R. Civ. P. 11 permits the Court to impose an appropriate sanction if a pleading, motion, or other paper is presented for any improper purpose, such as to harass or needlessly increase the cost of litigation, or if the claims or arguments therein are frivolous. See Fed. R. Civ. P. 11(b). "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of federal court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). The court must carefully choose sanctions that further the purpose of the Rule and should impose the least severe sanctions that would adequately deter its violation. *See Thomas v. Capital Security Servs., Inc.*, 836 F.2d 866,

875-76 (5th Cir. 1988). When warranted, sanctions may include an order directing payment to an opposing party of some or all of the reasonable attorneys' fees or costs incurred [*6] as a result of the violation. See Fed. R. Civ. P. 11(c)(2); *Merriman v. Security Ins. Co. of Hartford*, 100 F.3d 1187, 1191 (5th Cir. 1996).

22.    Defendants assert that the Lawyer Respondents have violated Rule 11 in the following respects:

a.   by falsely claiming that Defendants misrepresented Plaintiff's debt to the Travis County Court at Law;

b.   by falsely claiming that Defendants misrepresented the amount of Plaintiff's debt;

c.   by falsely claiming that Defendants attempted to collect an amount not permitted by law;

d.   by falsely claiming that Defendants requested a default judgment that failed to credit Plaintiff's payment to PRA;

e.   by falsely claiming in Paragraph 39 of the Complaint that "Plaintiff . . . sent a letter to PRA . . ." when in fact the Lawyer Respondents sent the letter, a fact that was not evident from the letter itself or the Complaint and that had the effect of making a material misrepresentation of fact to the Court in violation of Tex. Disc. E. Prof. Cond. 3.03 and Illinois RPC 3.3;

f.   by falsely claiming in Paragraph 40 of the Amended Complaint that "Plaintiff . . . sent a letter to PRA . . ." when in fact the Lawyer Respondents sent the letter, a fact that was not evident from the letter itself or the Complaint and that had

the effect of making a material misrepresentation of fact to the Court in violation of Tex. Disc. E. Prof. Cond. 3.03 and Illinois RPC 3.3;

g.   by failing to disclose to the Court that at the time of the alleged dispute referenced in Paragraph 39 of the Complaint and Paragraph 40 of the Amended Complaint plaintiff was subject to deemed admissions in the underlying collection suit – admissions which negated his alleged dispute and which were never undeemed;

h.   by failing to conduct a reasonable investigation of the facts of this case prior to filing suit;

i.   by suing Travelers on a Texas Debt Collector Bond when no TDCA claim was asserted against RSIEH;

j.   by suing all defendants under the TDCA when no damages were asserted under the TDCA;

k.   by seeking statutory damages against RSIEH and Travelers under the TDCA when RSIEG did not commit any statutory violation that would give rise to a claim for such damages;

l.   by seeking statutory damages against RSIEH and Travelers under the TDCA when Plaintiff did not even allege that the RSIEH defendants had committed any of the predicate acts for such statutory damages;

m.   by using this litigation for the improper purpose of trying to eliminate Plaintiff's lawful debts to PRA; and

     n.  By using this litigation for the improper purpose of extorting money from Defendants by forcing them to choose between paying Plaintiff's unreasonable demands or else incur the substantial expense of defending the case.

23.    The TDCA claims against all of the defendants had no basis in fact or law and are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.  Plaintiff's counsel therefore violated Rule 11 by signing and filing Plaintiff's Original and First Amended Complaints.

24.    The prayer to the state court default motion that RSIEH filed stated:

### III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Default Judgment and award Plaintiff the relief requested in Plaintiff's Petition by signing and entering the attached proposed Default Judgment.

The claim against RSIEH is based on the proposition that it should instead be read as follows:

### III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Default Judgment and award Plaintiff the relief requested in Plaintiff's Petition ███████████ ███████████.

25.    Such an assertion is frivolous.  Plaintiff provided no evidence, no discovery responses, and no expert report to provide any basis for such a reading of the default judgment motion.  He provided no evidence and designated no witness to rebut the assertion in the Javandoost declaration (ECG 103-2) that the default judgment sent to the Court Clerk included a credit for Plaintiff's $57 payment.  He took no deposition of any state court clerk and designated no court personnel who could have rebutted that testimony.

26.    Plaintiff further provided no basis for suing any of the defendants under the TDCA without an accompanying claim for actual damages.  As the court held in its summary judgment

order, there can be no claim under the TDCA in the absence of a claim for actual damages.  As of the date this case settled (less than one week before trial), Plaintiff's three sets of Rule 26 disclosures failed to disclose a penny of actual damages claimed in this case.

27.     As is set forth above, none of the three sets of disclosures disclosed a penny of damages of any type claimed against Defendant RSIEH. Plaintiff's prosecution of claims against a defendant from whom he sought nothing cannot be characterized as anything other than bad faith and harassment.  Either Plaintiff's suit violated Rule 11, or his attorneys acted with such gross incompetence in preparing each of his sets of disclosures (none of which stated that he was seeking statutory damages from RSIEH)[7] that the disclosures should be treated as false and misleading and a violation of the Court's scheduling orders.  If Plaintiff makes any assertion that the disclosures were incomplete then Defendants give notice that they intend to ask the Court to hold Plaintiff and his attorneys in contempt yet again, as they escaped dismissal of this action in February by representing to the Court that they had finally fully complied with its scheduling orders.

28.     The evidence shows that Plaintiff and his attorneys have violated Rule 11 both by making allegations that have no basis in fact or law and that are not warranted by a good-faith argument to extend, modify, or reverse the law and because they filed this suit for an improper purpose.  Defendants are entitled to an award of their fees and costs as provided for by Rule 11.

**D.  28 U.S.C. § 1927**

29.     28 U.S.C. § 1927 provides:

---

[7] The original Rule 26 disclosures served by Plaintiff stated:

a. Plaintiff is entitled to $1,000 in statutory damages under the FDCPA from Defendant Portfolio Recovery Associates, LLC pursuant to 15 U .S.C. § 1692k(a)(2), statutory damages of not less than $100 under the Texas Finance Code from Defendant, and reasonable attorneys' fees, and costs.

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

30.     Apart from sanctions under both Rule 11 and 28 U.S.C. § 1927, a district court has inherent power to impose sanctions.

> The imposition of sanctions under the inherent power is a decision particularly committed to the sound discretion of the district court. The inherent power was expressly derived from that "'control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers*, 501 U.S. at 43 (*quoting Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-631, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962)). When a district court imposes sanctions under the inherent power, it is because the court has determined, in its discretion, that the particular sanctions are necessary to effectuate these important goals as to the particular defendants under its particular theory of the case.

*Crowe v. Smith*, 151 F.3d 217, 240 (5th Cir. 1998).  Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *See Mendoza v. Lynaugh*, 989 F.2d 191, 195-97 (5th Cir. 1993).

> The showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is "similar to that necessary to invoke the court's inherent power." In practice, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both."

*Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143-144 (2d Cir. 2012) (citations omitted).

31.     The analysis for sanctions under Section 1927 is the same as in a case of Rule 11 sanctions.  In that context, the Supreme Court has held:

> Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would

> be appropriate. Such a determination may be made after the principal suit
> has been terminated.

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990).

32.     Defendants assert that all of the fees incurred subsequent to the failed $6,500.00 settlement should be awarded as sanctions under Section 1927. The Lawyer Respondents conducted this litigation as if it were their own case and not that of their client, not even informing Ozmun of the failed settlement until months after the fact.  *See* Ozmun Dep., RCH Doc. 101-2, at 150:11 – 152:10.  The use of § 1927 to sanction an attorney for failing to communicate settlement offers was addressed in *Deadwyler v. Volkswagen of America, Inc.*, 134 F.R.D. 128 (W.D.N.C. 1991), *aff'd sub nom. Moore v. Volkswagen of America, Inc.*, 966 F.2d 1443 (4th Cir. 1992).  In *Deadwyler*, the plaintiffs' attorney failed to communicate a settlement offer to his clients.  The court first observed that "[n]o type of misbehavior by an attorney is more universally and categorically condemned, and is therefore more inherently in 'bad faith,' than the failure to communicate offers of settlement." *Deadwyler*, 134 F.R.D. at 140.  Importantly, the court held that "[t]he absolute obligation to communicate, effectively and accurately, the terms of any offer of settlement for the client's decision" is not only a duty that is owed only to the client, but that it is also one which a lawyer "owes to his adversaries and the court." *Id.* Therefore, a "[b]reach of this obligation should be viewed as 'a blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly.'" *Id.*  Contrary to Francis' assertions, the conscious failure of an attorney to convey settlement offers is most certainly the appropriate subject of sanctions pursuant to § 1927. Indeed, "[n]o type of misbehavior by an attorney is more universally and categorically condemned, and is therefore more inherently in 'bad faith,' than the failure to communicate offers of settlement." *Deadwyler*, 134 F.R.D. at 140.

33.     "A court may include in the sanctions awarded under § 1927 the 'costs, expenses, and attorneys' fees' that the party awarded sanctions incurred in obtaining the award." *In re Royal Manor Mgmt.*, 525 B.R. 338, 366 (BAP 6th Cir. 2015), *aff'd sub nom. Grossman v. Wehrle (In re Royal Manor Mgmt.)*, 652 Fed. Appx. 330 (6th Cir. 2016)(citation omitted).  "The plain language of the statute appears to cover fees and costs from litigating a sanctions motion, and many courts have so held."  *Dillon v. BMO Harris Bank, N.A.*, 2017 U.S. Dist. LEXIS 18877, *6, 2017 WL 564501 (M.D.N.C. 2017).

34.     As one circuit court has observed:

> We begin our analysis of what the statute permits where we always should: the statute's plain language. The plain language of 28 U.S.C. § 1927 establishes that, in making a sanctions award to a party, a court may include the "costs, expenses, and attorneys' fees" that the party victimized by the sanctionable conduct incurred in obtaining the award. After all, those costs are, in the statute's terms, "incurred because of such conduct." If there were no sanctionable conduct there would have been no proceeding to impose sanctions. Because the costs arising from the sanctions proceedings were "occasioned by the objectionable conduct," a district court may include costs arising from the sanctions proceedings in the sanctions award.

*Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1298 (11th Cir. 2010) (citations omitted).  Both the language and the policy of § 1927 contemplate the inclusion of fees associated with a motion for sanctions:

> The time, effort, and resources expended in bringing sanctionable conduct to light would have been unnecessary had the sanctionable conduct never occurred. These costs are as much a harm to a party in the litigation as is the delay in the litigation or the substantive prejudice caused by the conduct. If we exclude from a possible award the costs of sanctions proceedings, we would undermine the compensatory goal of a sanctions award.

*In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 388 (3rd Cir. 1997).

35.     The following conduct reflects a litigation strategy premised on the notion that if Plaintiff forced Defendants to keep incurring fees they would eventually have to settle, just to end the pain of defense costs.  In support of this assertion Defendants would point to the following:

    a.  Plaintiff's counsel disregarded both of the scheduling orders in this case.

    b.  Plaintiff never deposed either of the defendants.

    c.  Plaintiff never sought an oral or written deposition from the consumer reporting agency whose testimony was necessary to authenticate the consumer report on which his claim against PRA was based.

    d.  Plaintiff repeatedly demanded more in settlement than the law would have permitted his to recover.

    e.  Plaintiff repeatedly demanded more in settlement than the amounts supported by his disclosures.

    f.  Plaintiff attempted to use this litigation to leverage cancellation of his debts and the creation of a false credit record.

36.     Plaintiff's attorneys failed to conduct this case in a manner that would reflect any actual intention to proceed to trial. They took no depositions, they secured no business records affidavits, and in general they wholly ignored their burden of proof.  Had the case proceeded to trial they had no witness who could have authenticated the credit reports on which their claims were based, no fact witness to rebut the testimony that they knew would come from Steve Javandoost, and no witness who could attest to the sending of the alleged dispute letters. The record as a whole supports the conclusion that the strategy in this case was to force Defendants to keep having to defend until they paid money, regardless of the facts or merits of the case. Throughout the case, Ozmun failed to appear in court (even when facing possible contempt sanctions or

dismissal of his case); Chatman, never appeared in any hearing or conference with the Court; and Wood played no role other than to announce his telephonic appearance.  These facts support a finding of both bad faith and harassment, but they also show that the multiplication of the proceedings by the continued prosecution of the case and the repeated demands that were not supported by the facts or the law had the effect of vexatiously multiplying the proceedings.

37.     The Lawyer Respondents failed to conduct this case in a manner that would reflect any actual intention to proceed to trial. The record as a whole supports the conclusion that the strategy in this case was to force Defendants to keep having to defend until they paid money, regardless of the facts or merits of the case.  These facts support sanctions under both Rule 11 and Section 1927.

38.     Finally, Respondent Kollman vexatiously multiplied the proceedings by filing the Motion to Recuse.  Her conduct was vexatious in the following respects:

a.   She is not admitted to practice in this district, yet she filed the motion without seeking or obtaining admission *pro hac vice*.  There was no basis or justification for an unlicensed attorney to have filed a motion in this case.

b.   She did not attempt to meet and confer in any meaningful way.  *See* Newburger Dec., Ex. L.  Her sole effort to confer was an email sent at 10:05 a.m. on May 11, 2018 (less than four hours before a scheduled hearing in this case) which stated: "Plaintiff and Plaintiff's counsel are filing a motion to recuse Judge Sparks in the referenced matter. I assume you oppose unless you email me otherwise".

c.   She certified falsely that she had conferred with Robbie Malone.  Ms. Malone was on the road to Austin that morning, and she neither spoke with, nor exchanged emails with, Ms. Kollman. *See* Malone Declaration.

d.   She waited until less than two hours before a scheduled hearing in this case to file the motion, causing Defendants to incur the expense of preparing for and attending to that motion. In fact PRA's counsel and PRA's representative both traveled from out of town to the hearing.

e.   The motion was meritless.  It was, in fact, so meritless that Judge Ezra denied it before Defendants could file the response that they had been drafting.

39.   Respondent Kollman should be ordered pursuant to Section 1927 to pay all of the fees and expenses incurred by Defendants in preparing for and attending the hearing that she disrupted and in working on a response to her motion.  Defendants leave it to the Court to determine what other action should be taken against Ms. Kollman for her unauthorized practice of law in this case.

40.   The imposition of sanctions against Respondents is meaningless if they can easily avoid payment of the sanctions.[8]  Therefore, Defendants ask that as it did in *Hall v. Chase Home Fin., LLC*, 2010 U.S. Dist. LEXIS 68236, *7, 2010 WL 2732404 (W.D. Tex. July 8, 2010), the Court make appropriate findings that Respondents' conduct was an intentional and malicious injury to Defendants so as to give preclusive, collateral estoppel effect to an award.  *See In re Powers*, 421 B.R. 326, 338 (Bankr. W.D. Tex. 2009).

**WHEREFORE, PREMISES CONSIDERED**, Defendants pray that the Court award them the reasonable fees and costs incurred in defending this case.  Defendants further pray that

---

[8] Defendant Wood's previous law firm was involuntarily dissolved.  *See* Doc. 101-12

the Court order that Defendants may submit an application for an award of fees and expenses in this case.  Defendants further pray for all such other and further relief, at law or in equity, as to which they may be justly entitled.

Respectfully submitted,

*/s/Manuel H. Newburger*
Manuel H. Newburger
TBN 14946500
Barron & Newburger, P.C.
7320 N. MoPac Expy., Suite 400
Austin, Texas 78731
(512) 476-9103
Fax: (512) 279-0310
mnewburger@bn-lawyers.com

ATTORNEYS FOR DEFENDANTS
RAUSCH, STURM, ISRAEL,
ENERSON & HORNIK, LLC and
TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

*/s/ Robbie Malone*
Robbie Malone
Email: rmalone@mamlaw.com
Eugene Xerxes Martin, IV
Email: xmartin@mamlaw.com
Cooper M. Walker
Email: cwalker@mamlaw.com

Malone Akerly Martin PLLC
NCX Building, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631

ATTORNEYS FOR DEFENDANTS
PORTFOLIO   RECOVERY   ASSOCIATES,
LLC and WESTERN SURETY COMPANY

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that I have requested that Plaintiff's counsel agree to the relief requested in the

foregoing motion.  As of the time of filing of this motion they have failed to do so.

/s/  <u>Manuel H. Newburger</u>
Manuel H. Newburger

**[CERTIFICATE OF SERVICE ON NEXT PAGE]**

## CERTIFICATE OF SERVICE

A true copy of the foregoing Motion was served on the persons on the service list below through

via the Court's ECF system on the 23rd day of August, 2018.

*/s/ Robbie Malone*
ROBBIE MALONE

**SERVICE LIST**

| | |
|---|---|
| **Celetha Chatman** <br> and <br> **Michael Jacob Wood** <br> Community Lawyers Group, Ltd <br> 73 West Monroe <br> Chicago, IL 60603 <br> Attorneys for Joseph Ozmun <br><br> **Robert Alan Zimmer, Jr.** <br> Zimmer & Associates <br> 707 West 10th Street <br> Austin, TX 78701 <br> Attorney for Joseph Ozmun <br><br> **Tyler Hickle** <br> Law Office Tyler Hickle, PLLC <br> 4005 C Banister Lane, Suite 120C <br> Austin, TX 78704 <br> Attorney for Joseph Ozmun <br><br> **Ruth A. Kollman**, Of Counsel <br> Law Office of Mynor E. Rodriguez P.C. <br> State Bar I.D. No. 11668050 <br> 1300 McGowen <br> Suite 280 <br> Houston, TX 77004 <br> 832-779-1081 tel <br> 888-351-3773 toll free <br> 832-553-7420 fax <br> rkollman@rodrigueztrialfirm.com | **Amy E. Clark** <br> Amy Clark Law <br> 11801 Domain Blvd, 3rd Floor <br> Austin, Texas 78758 <br> Phone:(512) 850-5290 <br> Fax: (626) 737-6030 <br> amy@amyclarklaw.com <br> Attorney for Joseph Ozmun <br><br> **Robbie Malone** <br> and <br> **Eugene Xerxes Martin, IV** <br> and <br> **Cooper M. Walker** <br> Malone Akerly Martin, PLLC <br> NCX Building <br> 8750 N. Central Expy., Suite 1850 <br> Dallas, TX 75231 <br> Attorneys for Portfolio Recovery <br> Associates, LLC <br> and <br> Western Surety Company |