JOSPEH OZMUN,

      **Plaintiff,**

-vs-

CAUSE NO.:
AU-16-CV-00940-SS

PORTFOLIO RECOVERY ASSOCIATES,
LLC; RAUSCH, STURM, ISRAEL,
ENERSON & HORNIK, LLC; WESTERN
SURETY COMPANY; and TRAVELERS
CASUALTY AND SURETY COMPANY
OF AMERICA,

      **Defendants.**

## ORDER

BE IT REMEMBERED on this day the Court considered Plaintiff Joseph Ozmun ("Ozmun")'s Motion for Attorneys' Fees [#152] and Defendants Portfolio Recovery Associates, LLC ("PRA") and Rausch, Sturm, Israel, Enerson & Hornik LLC ("RSIEH") (collectively "Defendants")'s Response [#156]; Defendants' Motion for Attorneys' Fees [#151], Ozmun's Responses [#154 and #156], and Defendants' Replies [#155 and #162]; Defendants' Motion for Contempt [#164], Ozmun's Response [#167], and Defendants' Reply [#168]; and Ozmun's Motion for Leave to File Supplemental Briefing [#173] and Defendants' Response [#174]. Having considered these pleadings, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This lawsuit involves Defendants' attempts to collect on a $2,065.21 credit-card debt owed by Ozmun. *See* Am. Compl. [#53] ¶ 22. After Defendants filed suit in Travis County Court to collect the outstanding debt, Ozmun made a payment of $57.00 toward the debt, bringing the total balance owed to $2,008.21. *Id.* ¶¶ 23–24. Ozmun contends Defendants then violated the Fair Debt

1

Collection Practices Act (FDCPA) and the Texas Debt Collections Act (TDCA) when they (1) sought a default judgment against him for the full $2,065.21[1] and (2) communicated the debt to a credit reporting agency without noting Ozmun disputed the amount of the debt. *Id.* ¶¶ 65–67. It is therefore fair to say that this lawsuit—which includes 174 docket entries and which has required the attention of a United States District Court for more than two years—is rooted in a dispute over fifty-seven dollars.

The incongruity between the amount at issue and the effort expended in litigation is not the only problematic aspect of this case. More concerning are the actions of Ozmun's attorneys, particularly Celetha Chatman and Michael Wood, who have repeatedly violated scheduling orders[2] and the Texas Disciplinary Rules of Professional Conduct.[3] Perhaps most concerning of all, this entire suit appears to have been manufactured by Chatman and Wood to collect the attorneys' fees they contend must be given to any plaintiff who brings a "successful action" under the FDCPA. *See* Pl.'s Mot. Att'ys' Fees [#152] at 5. Indeed, Plaintiff Ozmun's involvement in his own lawsuit is strikingly limited: he has consistently been unable to describe the nature of his injuries, and the complaint in this case was filed by Chatman and Wood before Ozmun was even aware they

---

[1] Notably, the state-court default judgment about which Plaintiff complains was never entered. *See* RSIEH's Mot. Summ. J. [#36-2] Ex. B (Ozmun Dep.) at 62:8–10 ("Q. And a judgment was not entered against you [in state court], correct? A. Correct.").

[2] In particular, Chatman and Wood requested leave to amend their complaint more than two months after the imposed deadline, Mot. Am. Compl. [#46]; filed a cross-motion for summary judgment two weeks after the deadline for dispositive motions, Order of July 24, 2017 [#79] at 4, 6; and served designations on Defendants nearly two months after they were due, Order of Feb. 15, 2018 [#91] at 2, 7.

[3] These violations include failing to consult with their client regarding a potential settlement agreement as required by Texas Disciplinary Rule of Professional Conduct 1.02(a)(2), directly communicating with an opposing party despite knowing the party was represented by counsel in violation of Rule 4.02(a), and assisting with the unauthorized practice of law in violation of Rule 5.05(b). These actions also violated Local Rule AT-7(a), which requires attorneys admitted to practice in the Western District to "comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct."

represented him. *See* RSIEH's Mot. Summ. J. [#36-2] Ex. B (Ozmun Dep.) at 69:14–72:1; *see also id.* at 8:23–25, 150:6–10.

Less than a month after this case was filed, details of a proposed settlement were exchanged between Defendants and Chatman and Wood. Although the proposed settlement is not in the record, it appears Plaintiff offered to settle this case in exchange for $6,500. Def. PRA's Resp. Mot. Enforce Settlement Agreement [#22] at 2. But after Defendants requested the settlement agreement include language releasing them from liability on all of Plaintiff's claims, Plaintiff's counsel—without consulting with their client—refused to agree. *See* Ozmun Dep. at 150:25–151:8, 170:16–171:1 (neither Chatman nor Wood communicated Defendants' offer of settlement to Ozmun); *see also* PRA's Resp. Mot. Enforce Settlement Agreement [#22-1] Ex. A at 2 ("Plaintiff's counsel refused the agreement because they would not sign a 'global release.'"). Then, despite this refusal, Plaintiff's counsel moved to enforce the settlement agreement they had previously refused. *See* Mot. Enforce Settlement Agreement [#13]. The Court denied this motion after finding that no agreement had been reached and noting that Plaintiff's claim to the contrary relied on a "'he said/she said' pleading" and an email that simply showed Plaintiff had memorialized its best and final offer of settlement. Order of Sept. 27, 2016 [#25] at 1. The Court concluded by stating it would "ultimately determine costs and perhaps attorney's fees and has a long memory." *Id.*

As the case dragged on, evidence indicating it had been brought for questionable reasons accumulated. At his deposition on November 21, 2016, Ozmun acknowledged that, although Chatman and Wood had filed a complaint on his behalf nearly four months before, he had never met either Chatman or Wood. *See* Ozmun Dep. at 8:23–25 ("Q. And how about Ms. Chatman and Mr. Wood, how did they become your lawyers? A. I don't know that. I've not met them."). In fact,

Ozmun acknowledged he had not even seen the complaint filed on his behalf until "a couple days" before his deposition. *See id.* at 55:23–56:4 ("Q. Before the past couple days, had you ever seen [the complaint] before? A. I don't think so. Q. So you didn't review it before it was filed? . . . A. No, sir."). Ozmun also admitted that although his complaint alleged he had suffered a reputational injury due to his lowered credit score, he had not actually seen his credit report and therefore had no way of knowing whether PRA's actions had lowered his credit score. *See* Ozmun Dep. at 119:6–18 ("Q. Do you know when it was you obtained the credit report that you are complaining about? . . . A. This is the first time I've seen [the report]."); *see also id.* at 70:25–71:5 ("Q. [W]hat was your credit score at the time of the erroneous report? A. I don't remember. Q. What should it have been? A. I don't know."). He further explained that although his complaint alleged he sent a letter to PRA disputing his debt, he could not remember who drafted or sent the letter, and he conceded that it had been his attorney's idea to send the letter in the first place. *See id.* at 120:10–19. ("Q. So do we now know whose idea it was to send the [dispute] letter, the May 31 letter? A. My attorney's. Q. OK. And did your lawyer draft that letter? A. Not necessarily. Q. Did your lawyer help you draft it? A. Or gave me guidelines. Q. And had you send it to PRA directly? A. I just don't remember."). Finally, Ozmun stated that he believed the extent of Defendants' liability was $157.00. *See id.* at 139:21–24 ("Q. [Y]ou said $57 would be about right for [RSIEH]? A. To the extent I understand my suit, yes, sir."); *see also id.* at 141:8–18 ("Q. And what you want from [PRA] is $100 for this alleged violation, right? A. For each violation, yes, sir. Q. Are you aware of them committing more than one? . . . A. No, not myself, no sir.").

Furthermore, in May of 2017, PRA provided the Court with evidence that it had received several misleading but identically worded dispute letters from other clients of Chatman and Wood. In these letters, Chatman and Wood's clients noted that they "refuse to pay" the debt owed to PRA

4

because "[their] monthly expenses exceed [their] monthly income" before noting, almost as an afterthought, that "the amount [PRA is] reporting is not accurate, either." *See* PRA's Mot. Summ. J. [#62-1] App. at 2–3.[4] These concerning facts did not go unremarked upon. On April 12, 2017, the Court stated it expected the parties to reach a settlement agreement soon and expressed concern that the only basis for Ozmun's lawsuit appeared to be "a technical violation involving $57.00 (if any violation at all)." Order of April 12, 2017 [#56] at 2.

Further admonitions followed. On July 24, 2017, the Court entered a take-nothing judgment on Plaintiff's state-law claims because Plaintiff lacked standing. Order of July 24, 2017 [#79] at 12. Although the Court determined genuine issues of fact precluded summary judgment on Plaintiff's FDCPA claims, it also observed there was "[e]vidence that Plaintiff's attorneys are involved in a scheme to force settlements from debt collectors by abusing the FDCPA" and that this case appeared to "misus[e] the statutes involved." *Id.* at 16, 18. The Court warned that future decisions on costs and attorneys' fees would "be guided by the apparent lack of good faith in this case." *Id.* at 18. On January 23, 2018, the Court held a hearing on Defendants' motion to hold Ozmun, Chatman, and Wood in contempt for failing to meet a court-imposed deadline. *See* Order of Feb. 15, 2018 [#91] at 1, 3. Although Defendants' counsel came from out of town to attend the hearing, neither Chatman nor Wood attended; instead, they sent a local attorney they had retained the day before who was unable to answer any of the Court's questions. *See id.* at 3. On January 26, 2018, the undersigned sent a letter to the Chairman of the Disciplinary Committee of the Western District of Texas in which he highlighted the evidence suggesting "Ms. Chatman and her associates

---

[4] PRA also provided the Court with evidence that Ozmun's dispute letter had been faxed directly from Chatman and Wood's office. Defs.' Joint Mot. Summ. J. [#101-7] Ex. F. This fact—combined with Ozmun's inability to remember who drafted the dispute letter and the fact that Ozmun's dispute letter was identical to those of Chatman and Wood's other clients—indicates that Chatman and Wood, rather than Ozmun, drafted the dispute letter at issue in this case.

are involved in a scheme to force settlements from debt collectors by abusing the FDCPA." Mot. Recuse [#107-1] Ex. 1 at 1–2. And on May 16, 2018, the Honorable David Ezra—in considering a Motion to Recuse that Plaintiff's counsel had filed mere hours before a scheduled hearing—commented that "[t]he basis of the FDCPA suit leaves much to be desired." Order of May 16, 2018 [#113] at 2.

Eventually, the Court set this case for trial for July 16, 2018. Order of June 27, 2018 [#124]. Two days later, Ozmun moved to stay the case pending mandamus review of Judge Ezra's decision on the Motion to Recuse. Mot. Stay [#130] at 1, 3. The Court denied the motion, noting that trial had been set for more than eighteen months and was required "to resolve key factual questions." Order of July 3, 2018 [#138] at 4. On July 11, the parties filed a Joint Notice of Settlement wherein Plaintiff agreed to dismiss his remaining claims against the Defendants with prejudice in exchange for $1,250.00. Joint Notice Settlement [#141]. Both parties also announced their intention to seek attorneys' fees following dismissal. Plaintiff, however, refused to dismiss his claims, contending that because each side intended to file motions for fees and costs, dismissing the case would deprive the Court of jurisdiction over these motions. Resp. Mot. Dismiss [#145] at 2. On July 19, 2018, Defendants were then compelled to file a motion to dismiss—in effect, a motion to enforce the settlement agreement. The Court granted the motion so the settlement agreement could be effectuated. Order of Aug. 9, 2018 [#144].

Consistent with the notice of settlement, both parties filed motions for attorneys' fees and costs. Ozmun seeks fees and costs under 15 U.S.C. § 1692k(a)(3), which mandates an award of fees and costs to an individual plaintiff who maintains a successful action to enforce a defendant's liability under the FDCPA. Pl.'s Mot. Att'ys' Fees [#152] at 2–3. Defendants similarly seek an award of fees under 15 U.S.C. § 1692k(a)(3), as well as under Texas Finance Code § 392.403(c),

Rule 11 of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1927. Defs.' Mot. Att'ys' Fees [#151] at 2. Defendants also move to hold Chatman, Wood, Amy Clark, and Ozmun in contempt for perpetrating a fraud upon the court by failing to dismiss this case with prejudice as agreed to in the Notice of Settlement. Mot. Contempt [#164] at 2–3. These pending motions have been briefed and are ripe for decision.

**Analysis**

The Court first considers Defendants' motion for attorneys' fees before considering Plaintiff's motion for attorneys' fees. It concludes with a consideration of Defendants' motion for contempt.

## I.     Defendants' Motion for Attorneys' Fees

Defendants claim they are entitled to reasonable attorneys' fees under § 1692k(a)(3) of the FDCPA and § 392.403 of the TDCA because Ozmun brought these claims in bad faith and for the purpose of harassment. Defs.' Mot. Att'ys' Fees [#151] at 13–14. Defendants further claim that they are entitled to attorneys' fees as sanctions under Federal Rule of Civil Procedure 11 and under 28 U.S.C. § 1927 because Ozmun made allegations with no basis in law or fact, filed his suit for an improper purpose, and needlessly continued this case. *Id.* at 22, 24. The Court first considers whether Defendants should be awarded attorneys' fees as sanctions under Rule 11 and § 1927 before considering whether Defendants are eligible for attorneys' fees under the federal and state debt collection statutes.

### A.     Sanctions Under Federal Rule of Civil Procedure 11

Rule 11 permits courts to impose an appropriate sanction if a pleading, motion, or other paper is presented for any improper purpose or if the claims or arguments asserted therein are frivolous. *See* FED. R. CIV. P. 11(b). "[T]he central purpose of Rule 11 is to deter baseless filings

7

in district court and thus . . . streamline the administration and procedure of federal court." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990). Courts must carefully choose sanctions that further the purpose of the Rule and should impose the least severe sanctions that would adequately deter its violation. *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875–76 (5th Cir. 1988). When warranted, sanctions may include an order directing payment to an opposing party of some or all of the reasonable attorneys' fees or costs incurred as a result of the violation. *See* FED. R. CIV. P. 11(c)(2); *Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1191 (5th Cir. 1996).

Courts also possess inherent power to "protect the efficient and orderly administration of justice . . . [and] to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *See Mendoza v. Lynaugh*, 989 F.2d 191, 195–97 (5th Cir. 1993).

Defendants identify fourteen separate actions or statements by Plaintiff's counsel as grounds for sanctions under Rule 11, including falsely claiming Defendants misrepresented Plaintiff's debt to the Travis County Court, falsely claiming Plaintiff sent a dispute letter to PRA when the letter was in fact sent by Plaintiff's counsel, suing Defendants under the TDCA without asserting damages as the statute requires, and "using this litigation for the improper purpose of extorting money from Defendants by forcing them to choose between paying Plaintiff's unreasonable demands or else incur the substantial expense of defending the case." Defs.' Mot. Att'ys' Fees [#151] at 19–21.

The Court declines to award attorneys' fees as sanctions under Rule 11. A motion for sanctions brought under Rule 11 "must be made separately from any other motion." FED. R. CIV. P. 11(c)(2). Defendants, however, included their Rule 11 motion within their motion for fees and

sanctions under § 1927. Thus, awarding Defendant attorneys' fees as sanctions would be contrary to the clear directives of Rule 11.

### B. Attorneys' Fees Under 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that a court may require an attorney who "so multiplies the proceedings in any case unreasonably or vexatiously" to personally satisfy the costs reasonably incurred by such conduct. A party may be found to have multiplied proceedings unreasonably or vexatiously if there is evidence of "bad faith, improper motive, or reckless disregard to the duty owed to the court." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002). Section 1927 permits the court to shift the entire costs of defense if the party requesting sanctions proves by "clear and convincing evidence" that "*every facet* of the litigation was patently meritless" and that counsel "lacked a reason to file suit" and wrongfully persisted in its prosecution "through discovery, pre-trial motions, and trial." *Id.* at 526 (emphasis in original).

Defendants contend sanctions are appropriate under § 1927 because the evidence demonstrates "Plaintiff's attorneys failed to conduct this case in a manner that would reflect any actual intent to proceed to trial." *Id.* at 26. But Defendants have not met the high bar of proving by clear and convincing evidence that every facet of this litigation was patently meritless. *See Procter & Gamble*, 280 F.3d at 526. Although the Court condemns Plaintiff's counsel's conduct in this case, Plaintiff has plausibly alleged a technical violation of the FDCPA. Furthermore, the Fifth Circuit has held that imposing sanctions under § 1927 is inappropriate in cases where, as here, the court previously encouraged the parties to settle their claims. *See Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Fed'n of Fed. Emps.*, 844 F.2d 216, 222 (5th Cir. 1988) (concluding there is a "patent anomaly" in imposing sanctions for "filing a suit that [the court] considered worthy of

compromise"). Thus, the Court declines to award attorneys' fees to Defendants as sanctions under § 1927.

## C.    Attorneys' Fees Under the FDCPA and TDCA

Congress passed the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To encourage consumers to bring suit, the statute awards attorneys' fees and costs to plaintiffs who bring a "successful action to enforce . . . liability" under the FDCPA. *Id.* § 1692k(a)(3); *see also Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 44 (5th Cir. 2008) (per curiam). Section 1692k(a)(3) further states, however, that if the court determines the claim was brought "in bad faith and for the purpose of harassment," it may award reasonable attorneys' fees to the defendant. 15 U.S.C. § 1692k(a)(3). "Bad faith" and "harassment" implies "the conscious doing of a wrong because of a dishonest purpose or moral obliquity." *Rodriguez v. ICS Sys.*, No. EP-16-CV-00186-DCG, 2017 WL 2105679, at *2 (W.D. Tex. May 12, 2017) (citing *Cunningham v. Credit Mgmt., L.P.*, No. 3:09-CV-1497-G, 2010 WL 3721049, at *2 (N.D. Tex. Sept. 27, 2010); *Grant v. Barro*, No. 07-194-JJB-DLD, 2007 WL 3244986, at *1 (M.D. La. Nov. 1, 2007)).

Section 392.403 of the Texas Finance Code is the TDCA's analogue to § 1692k(a)(3). Under this section, a person who successfully brings a TDCA action is entitled to reasonable attorneys' fees and costs. TEX. FIN. CODE § 392.403(b). But unlike the FDCPA, if the court determines the TDCA action was brought in bad faith or for purposes of harassment, an award of costs and fees to the defendant is mandatory, not discretionary. *Id.* § 392.403(c). Although there is no guidance from the Fifth Circuit or the Texas courts as to what constitutes bad faith in the

§ 392.403(c) context, Texas appellate courts have defined bad faith in similar statutes as "the conscious doing of a wrong for dishonest or malicious purposes." *Elbaor v. Sanderson*, 817 S.W.3d 826, 829 n.1 (Tex.App.—Fort Worth 1991, no writ); *see also WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 676 (Tex.App.—Houston [1st Dist.] 2016, no pet.); *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 668 (Tex.App.—Dallas 2003, no pet.); *Schlager v. Clements*, 939 S.W.2d 183, 190 (Tex.App.—Houston [14th Dist.] 1996, writ denied). In determining bad faith, "the court must consider the acts or omissions of counsel, not merely the legal merit of a pleading or motion." *Drummond*, 508 S.W.3d at 676.

Here, Chatman and Wood manufactured a case by misusing federal and state debt collection statutes and then failed to inform their client of a generous settlement offer, all in an attempt to augment their attorneys' fees. They contend this lawsuit was brought to vindicate "Joseph Ozmun's Congressionally-granted right to be free from abusive and unconscionable debt-collection practices." Resp. Defs.' Mot. Att'ys' Fees [#157] at 1. The evidence suggests otherwise.

The complaint in this lawsuit was filed—without any input from Ozmun—by two attorneys on behalf of a client who had never met them, had never been to their offices, and was entirely unaware they represented him. Ozmun Dep. at 8:23–25, 9:1–17, 55:17–24, 150:6–10. It was filed on behalf of a client who has never been able to articulate, even in general terms, what injury he suffered, why these particular defendants were responsible, or which of his "Congressionally-granted right[s]" were violated. *See id.* at 57:17–58:7. It relied on a deceptively worded and intentionally confusing dispute letter the client did not even draft and on a state court judgment that was never even entered. *See* Am Compl. [#53-1] Ex. F; *see also* Ozmun Dep. at 62:8–10. And it was settled on the eve of trial for an amount that was nearly five times less than Plaintiff would have received two years earlier . . . had his attorneys made him aware of an offer of settlement.

*See* Mot. Enforce Settlement Agreement [#13]; *see also* Joint Notice Settlement [#141]; Ozmun Dep. at 150:11–24. In noting these facts, the Court does not intend to suggest that a client must be fluent in the statutory provisions and the legal theories supporting his suit to refute a charge of bad faith and harassment. But where a client's knowledge of and involvement in his suit is *de minimis*, a plausible conclusion is that the suit is being brought not to vindicate the client's rights but for some other, undeclared reason.

Aside from Ozmun's near-nonexistent involvement in this lawsuit and Chatman and Wood's unexplained failure to communicate a generous settlement offer to their client, there are further indications that Chatman and Wood are part of a cottage industry of litigants who seek to manufacture lawsuits under the FDCPA in order to secure attorneys' fees. *See Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 138 (E.D.N.Y. 2006), *cited by Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513–14 (2d Cir. 2007). As the Court has previously noted, this case follows a well-established pattern whereby Chatman and Wood represent a debtor-plaintiff, fax a misleadingly worded dispute letter to a debt collector, and then file suit against the debt collector who was misled by the dispute letter. *See* Order of April 2, 2018 [#52], *Tejero v. Portfolio Recovery Assocs. LLC et al.*, No. AU-16-CV-767-SS; *compare* First Am. Compl. [#53-1] Ex. F *and* Compl. [#1-1] Ex. B, *Tejero*, No. AU-16-CV-767-SS, *with* Compl. [#1-1] Ex. A, *Palomo v. Portfolio Recovery Assocs. LLC et al.*, No. 1:16-CV-628 *and* Compl. [#1-1] Ex. E, *Jones v. Midland Funding, LLC et al.*, No. 1:16-CV-592. In each of the above instances, Chatman and Wood begin with a blanket refusal to pay the debt owed, then explain "there is no reason" for the debt collector to continue to contact the consumer because the consumer's "monthly expenses exceed [her] monthly income" before noting, almost as an aside, that "the amount [the debt

collector is] reporting is not accurate, either."[5] *E.g.*, Am. Compl. [#53-1] Ex. F. While such language might be understandable if it were composed by an unsophisticated consumer, *see Emerson v. Fidelity Capital Holdings, Inc.*, No. 15 c 3416, 2015 WL 5086458, at *2 (N.D. Ill. Aug. 14, 2015), it is unclear why Chatman and Wood—two attorneys with substantial FDCPA experience—were unable to draft a clearer dispute letter in this case, particularly since, after the first several lawsuits, it would have become clear to any reasonable and competent attorney that the dispute letters were consistently being misconstrued by the debt collectors.

As for Plaintiff's TDCA claims, the evidence supporting a finding of bad faith is even more substantial. Although the TDCA plainly limits suits to those brought for injunctive relief or for actual damages, TEX. FIN. CODE § 392.403(a), Plaintiff's amended complaint neither requested an injunction nor alleged actual damages. Am. Compl. [#53] at 12; *see also* Order of July 24, 2017 [#79] at 12. Moreover, Plaintiff requested attorneys' fees under § 392.403(b) despite that section's unambiguous command that attorneys' fees may be recovered only where a plaintiff obtains injunctive relief or actual damages. Thus, unlike Plaintiff's FDCPA claims, Plaintiff has not even alleged a plausible claim under the TDCA. This clear misuse of the TDCA, when coupled with the extensive evidence detailed above, supports a finding that Plaintiff's counsel brought their TDCA claims in bad faith.

Plaintiff's counsel respond to this evidence of bad faith with non sequiturs, excuses, and ambiguous excerpts from Ozmun's deposition. *See, e.g.*, Resp. Defs.' Mot. Att'ys' Fees [#157] at 12 (contending that the involvement of an attorney who is not admitted to practice in the Western

---

[5] The letters conclude with a promise that the consumer "will be in touch" if his "circumstances should change," *e.g.*, Am. Compl. [#53-1] Ex. F. If the letters were intended to inform the debt collectors that the debtor is unable to pay the debt because of his present financial circumstances, it makes sense that a debtor might promise to alert the debt collectors if his financial circumstances improve. But if, as Plaintiff's counsel claims, the letters were intended to dispute the accuracy of the debt, this promise serves to further mislead the debt collectors about the nature of the dispute.

District was not improper because the attorney is licensed to practice in Texas); *id.* at 11 (justifying the filing of a motion to recuse mere hours before a scheduled hearing by noting simply that "[n]o rule holds that such a motion was untimely"); *id.* at 7 (defending their failure to inform Ozmun of settlement negotiations by pointing to deposition testimony that the negotiations *might* have been communicated to Ozmun by a different attorney). Plaintiff's counsel also offer three arguments as to why § 1692k(a)(3) does not apply in this case. The Court addresses each argument in turn.

First, Plaintiff's counsel contend that the Fifth Circuit's opinion in *Perry v. Stewart Title Company*, 756 F.2d 1197 (5th Cir. 1985) requires a defendant to "prevail" in order to recover fees under the FDCPA; because Defendants did not prevail in this case, they may not recover attorneys' fees. Resp. Defs.' Mot. Att'ys' Fees [#157] at 15–16. In *Perry*, the Fifth Circuit affirmed the district court's denial of fees to a defendant who prevailed on an FDCPA claim because the defendant had failed to affirmatively show that the plaintiff had brought the FDCPA claim in bad faith and for the purpose of harassment. *Perry*, 756 F.2d at 1211. *Perry* therefore does not require a defendant to prevail in order to be eligible for fees under the FDCPA; it simply reiterates that even prevailing defendants must show bad faith and harassment to recover attorneys' fees under the FDCPA. Indeed, the Supreme Court indicated as much in *Marx v. General Revenue Corporation*, 568 U.S. 371 (2013) when it explained that § 1692k(a)(3) "provides that plaintiffs who bring an action in bad faith and for purpose or harassment may be liable for the defendant's fees and costs" without any requirement that defendants "prevail." *Id.* at 383.

Second, Plaintiff's counsel contends *Perry* permits defendants to recover attorneys' fees under § 1692k(a)(3) only where the defendant shows the plaintiff *himself* brought the FDCPA action in bad faith and with the purpose to harass. Resp. Defs.' Mot. Att'ys' Fees [#157] at 17. As an initial matter, there is nothing in *Perry* to indicate the Fifth Circuit understood § 1692k(a)(3) as

permitting an award of fees only where a bad-faith action is brought by the plaintiff himself. More significantly, there is nothing in the text of § 1692k(a)(3) to support this requirement. That section permits an award of attorneys' fees to defendants "[o]n a finding by the court that an *action under this section* was brought for bad faith for the purpose of harassment." 15 U.S.C. § 1692k(a)(3) (emphasis added). Contrary to Plaintiff's assertion, § 1692k(a)(3) does not contemplate a distinction between bad faith on the part of a plaintiff and bad faith on the part of plaintiff's counsel. And adopting Plaintiff's interpretation of § 1692k(a)(3) would encourage plaintiffs' attorneys to bring nuisance suits by effectively insulating the attorneys from liability for their bad-faith conduct. Not only is such a result undesirable on policy grounds, but it also runs counter to Congress's intent behind the FDCPA. *See* S. Rep. No. 95-382, at 5 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1700 (explaining that "the court may award [a] debt collector reasonable attorney's fees and costs" "[i]n order to protect [the debt collector] from nuisance lawsuits").

Finally, Plaintiff's counsel contend that the Court cannot find bad faith "because Plaintiff obtained a favorable result through settlement." *Id.* at 18. But, as this case proves, statutes like the FDCPA sometimes engender lawsuits that are brought not to protect consumers from abusive collection practices but to generate attorneys' fees an order of magnitude larger than the amounts recovered by the consumers. Such is the case here: Chatman and Wood brought suit not to obtain a favorable judgment but rather "as a transparent attempt to bully the administration of justice." *Glick v. Koenig*, 766 F.2d 265, 270 (7th Cir. 1985). In light of their conduct, the Court concludes Defendants are entitled to attorneys' fees on the FDCPA and TDCA claims because they were brought in bad faith and for the purpose of harassment.

A final note on liability for these fees is in order. The record in this case demonstrates it was litigated by Chatman and Wood with practically no input from, consultation with, or influence

by Ozmun himself. The actions that give rise to a finding of bad faith—from the failure to meet court-imposed deadlines to the drafting of the deceptive dispute letter to the refusal to communicate an offer of settlement—were Chatman and Wood's alone. Ozmun possessed no meaningful knowledge of the facts in this case, made no meaningful decisions in how the case should proceed, exercised no meaningful control over the litigation, and—except for being deposed—had no meaningful participation in this lawsuit. As Chatman and Wood have conceded, there is no evidence Ozmun was responsible for the bad-faith conduct that has plagued this case for more than two years. *See* Resp. Defs.' Mot. Att'ys' Fees [#157] at 17. Because of Ozmun's minute involvement in this lawsuit, the Court determines that fees and costs are to be assessed solely against Celetha Chatman, Michael Wood, and Community Lawyers Group, Ltd.

### D. Calculation of Reasonable Attorneys' Fees

Because the Court has determined Plaintiff's FDCPA and TDCA claims were brought in bad faith and for the purpose of harassment, it must determine the reasonable attorneys' fees Defendants incurred. Defendant PRA requests $82,425.50 in fees and $2,307.33 in costs, including $1,199.71 in travel expenses. Defendant RSIEH requests $113,107.04 in fees and $1,665.99 in costs. Plaintiff does not object to the amount of either Defendants' requested fees or costs.

The Fifth Circuit uses a two-step process to calculate attorneys' fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). First, a court calculates a "lodestar" figure "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community" for "similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*; *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984). In so doing, the court considers whether the attorneys demonstrated proper billing judgment by "writing off

unproductive, excessive, or redundant hours." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).

After calculating the lodestar, the court may increase or decrease the figure based on the following factors: (1) the time and labor required by the litigation; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Heidtman*, 171 F.3d at 1043 n.5 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

Finally, a court may tax as costs the expenses of obtaining a deposition transcript and photocopies necessary for use in this case. *See* 28 U.S.C. § 1920(2), (4) (authorizing a court to tax as costs fees for printed transcripts and for making copies of materials where such transcripts and copies "are necessarily obtained for use in the case"). Similarly, a court may tax as costs travel and related expenses where they are "necessarily obtained for use in the case." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133 (5th Cir. 1983).

Defendant PRA provided the time sheets of their attorneys, demonstrating they expended 481.7 hours defending this case. *See* Defs.' Mot. Att'ys' Fees [#151-2] Ex. B at 6–98. The Court finds this number reasonable, as PRA completed written discovery, filed two answers, a response to a motion to enforce the settlement agreement, two motions for summary judgment, and two motions to dismiss, defended against a cross-motion for summary judgment, two requests to extend

time, and a motion to amend, and attended five hearings. Furthermore, PRA has shown the rates they charged are appropriate for the Austin, Texas community. For example, Defendants charged an hourly rate of $225 for the work of a senior partner, $200 for that of a junior partner, and $175 for an associate. Defs.' Mot. Att'ys' Fees [#151-2] Ex. B at 3. Such rates are in line with, if not below, the rates of the Austin legal market and are in line with what this Court has previously awarded. *See* Order of Feb. 15, 2018 [#91] at 5–6.[6] The Court therefore finds PRA's request of $82,425.50 in attorneys' fees reasonable.

The Court also finds PRA is entitled to the cost of obtaining the transcript of Ozmun's deposition, the photocopies necessary for use in this case, the postage fees, and the travel expenses to Plaintiff's deposition and hearings before this Court because such expenses were necessarily incurred in the use of this case. *See* 28 U.S.C. § 1920(2), (4); *see also Studiengesellschaft*, 713 F.2d at 133. The Court thus awards PRA $2,307.33 in costs.

Defendant RSIEH also provided time sheets of their attorneys, demonstrating they expended 284.53 hours defending this case. Defs.' Mot. Att'ys' Fees [#151-1] Ex. M (Time Sheets). However, 27 of these hours are attributed to "AH," "KC," and "BJS" without any explanation regarding to whom these initials refer or their roles, qualifications, or experience. Accordingly, the Court subtracts these 27 hours from RSIEH's total, resulting in 257.43 hours. The Court finds this revised number reasonable, as RSIEH took Plaintiff's deposition and completed written discovery, filed two answers, two motions for summary judgment, two motions to dismiss, and a motion to strike, defended against a cross-motion for summary judgment and a motion to enforce a settlement agreement, and attended five hearings. However, the Court finds

---

[6] This Court frequently looks to the State Bar of Texas Hourly Rate Report as a reference on reasonable hourly rates in the relevant legal market. *See* State Bar of Texas Department of Research and Analysis, 2015 Hourly Fact Sheet (2015), https://www.texasbar.com/AM/Template.cfm?Section=demographic_and_economic_trends& Template=/CM/ContentDisplay.cfm&ContentID=34182.

Manuel Newburger's customary hourly rate of $450 is in excess of the State Bar of Texas's Hourly Rate Report for attorneys of similar experience in the Austin market. *See State Bar of Texas Department of Research and Analysis, 2015 Hourly Fact Sheet* (2015), https://www.texasbar.com/AM/Template.cfm?Section=demographic_and_economic_trends&Template=/CM/ContentDisplay.cfm&ContentID=34182 (showing a median hourly rate for attorneys in the Austin-Round Rock Metropolitan Statistical Area with over 25 years' experience of $306). Accordingly, the Court determines the reasonable hour rate for RSIEH's legal work is $300. The Court therefore awards RSIEH $77,229.00 in fees.

The Court also finds RSIEH is entitled to the costs of obtaining the transcript of Plaintiff's deposition and the travel expenses incurred to attend a hearing before this Court on January 23, 2018 as "necessarily incurred in the use of this case." *See* 28 U.S.C. § 1920(2), (4); *Studiengesellschaft*, 713 F.2d at 133. The Court thus awards RSIEH $1,665.99 in costs.

## II.     Plaintiffs Motion for Attorneys' Fees

Plaintiff argues he should be awarded attorneys' fees under § 1692k(a)(3) because by obtaining greater relief from a settlement than he would have obtained from a favorable judgment, he was a "successful party" under the FDCPA. Pl.'s Mot. Att'ys' Fees [#152] at 5. Defendants respond that a party that enters into a private settlement agreement without a consent decree is not a "prevailing party." Resp. Pl.'s Mot. Att'ys' Fees [#156] at 6. According to Defendants, because Ozmun was not a "prevailing party," his was not a "successful action" under § 1692k(a)(3), and Ozmun therefore cannot recover attorneys' fees.

Even if Plaintiff's private settlement constitutes a "successful action to enforce . . . liability under the FDCPA,"[7] 15 U.S.C. § 1692k(a)(3), the bad faith in this case makes awarding attorneys'

---

[7] Because the Court concludes Plaintiff's counsels' conduct renders awarding attorneys' fees unjust, it does not decide whether a private settlement constitutes a successful action to enforce liability under the FDCPA.

fees to Plaintiff inappropriate. As the Fifth Circuit recently explained, district courts may refuse to award attorneys' fees requested under § 1692k(a)(3) to prevailing plaintiffs where "'special circumstances would render such an award unjust.'" *Davis v. Credit Bureau of the South*, 908 F.3d 972, 975 (5th Cir. 2018) (per curiam) (quoting *Romain v. Walters*, 856 F.3d 402, 407 (5th Cir. 2017)). Awarding fees to Plaintiff in this case would be unjust because Plaintiff obtained limited success, Chatman and Wood "essentially created" the FDCPA claim, and no actual damages were awarded. *Cf. id.* at 978, 980. Moreover, the evidence in this case amply demonstrates that Chatman and Wood utilized a "technical violation[] of the FDCPA solely as a means for generating attorneys['] fees." *Id.* at 981. As the Fifth Circuit "disapprov[es]" of awarding fees in such circumstances, *id.*, the Court refuses to do so. Accordingly, it denies Plaintiffs' motion for attorneys' fees.

### III.    Defendants' Motion for Contempt

Finally, Defendants have moved the Court to order Chatman, Wood, Amy Clark, and Ozmun to appear and show cause why they should not be held in contempt "for their apparent misrepresentations to, and fraud upon the Court." Mot. Contempt [#164] at 3. The alleged misrepresentation involves Chatman, Wood, Clark, and Ozmun's failure to dismiss Ozmun's FDCPA claims against Defendants despite entering into a settlement agreement that contemplated a voluntary dismissal of all claims against Defendants in exchange for $1,250. *Id.* at 2–3; *see* Joint Notice Settlement [#141]. Chatman, Wood, Clark, and Ozmun respond that Defendants' counsel "deliberately misconstrued" the terms of Plaintiff's offer of settlement. Resp. Mot. Contempt [#167] at 2. They further contend that the settlement agreement explicitly contemplated both parties moving for attorneys' fees and costs and that they never agreed to dismiss Plaintiff's claims

because doing so would deprive this Court of jurisdiction to hear these motions. *See id.*; *see also* Resp. Mot. Dismiss [#145] at 2.

It is admittedly difficult to understand how Plaintiff's counsel could be unaware that a district court retains jurisdiction over motions for attorneys' fees even following dismissal of the underlying suit. This principle is readily apparent from case law, *see Procter & Gamble*, 280 F.3d at 524–25, well-known legal treatises, *see* 15B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3915.6, and this Court's own Local Rules, *see* L.R. CV-7(j)(1). The Court concludes, however, that Plaintiff's resistance to dismissal was borne out of a desire to preserve the motions for attorneys' fees as well as confusion resulting from the fast-paced and unusual method of consummating the settlement agreement. *See* Mot. Contempt [#164] at 1–2 (explaining that Defendants considered Plaintiff's acceptance of a $1,250 cashier's check following a counter-offer presented in an email as constituting an acceptance of the terms in the joint notice of settlement). Because Plaintiff's reluctance to dismiss this case was rooted in a misunderstanding of a procedural doctrine, the Court concludes Plaintiff did not intend to perpetrate a fraud upon the Court by refusing to dismiss the FDCPA claims. And in any event, these claims have been dismissed with prejudice, and the Court has awarded Defendants the entirety of their attorneys' fees incurred in this suit. The Court consequently denies Defendants' motion to hold Chatman, Wood, Clark, and Ozmun in contempt.

### Conclusion

Because Plaintiff's FDCPA claims and TDCA claims were brought in bad faith and for the purposes of harassment, the Court grants Defendants' motion for attorneys' fees, awards Defendant PRA $82,425.50 in fees and $2,307.33 in costs, and awards Defendant RSIEH $77,229.00 in fees and $1,665.99 in costs. Similarly, because Plaintiff's counsels' conduct in this

case would render awarding his attorneys' fees unjust, the Court denies his motion for attorneys' fees. Finally, because the Court concludes Ozmun, Chatman, Wood, and Clark did not intend to mislead or perpetrate a fraud upon the Court, it denies Defendants' motion for contempt.

Accordingly,

IT IS ORDERED that Plaintiff Joseph Ozmun's Motion for Leave to File Supplemental Briefing [#173] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that Plaintiff Joseph Ozmun's Motion for Attorneys' Fees [#152] is DENIED;

IT IS FURTHER ORDERED that Defendants Portfolio Recovery, Associates, LLC and Rausch, Sturm, Israel, Enerson & Hornik LLC's Motion for Attorneys' Fees [#151] is GRANTED;

IT IS FURTHER ORDERED that Celetha Chatman, Michael Wood, and Community Lawyers Group, Ltd. SHALL PAY EIGHTY-FOUR THOUSAND, SEVEN HUNDRED THIRTY-TWO AND 83/100 DOLLARS ($84,732.83) to Defendant Portfolio Recovery Associates, LLC for attorneys' fees and costs incurred as a result of this litigation;

IT IS FURTHER ORDERED that Celetha Chatman, Michael Wood, and Community Lawyers Group, Ltd. SHALL PAY SEVENTY-EIGHT THOUSAND EIGHT HUNDRED NINETY-FOUR AND 99/100 DOLLARS ($78,894.99) to Defendant Rausch, Sturm, Israel, Enerson & Hornik, LLC for attorneys' fees and costs incurred as a result of this litigation; and

IT IS FINALLY ORDERED that Defendants Portfolio Recovery Associates LLC and Rausch, Sturm, Israel, Enerson & Hornik LLC's Motion for Contempt [#164] is DENIED.

SIGNED this the 29ᵗʰ day of March 2019.

_____
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE